EXHIBIT A

# United States District Court

FOR THE
NORTHERN DISTRICT OF CALIFORNIA
CRIMINAL DIVISION
VENUE: SAN FRANCISCO

E-filing

UNITED STATES OF AMERICA,

V.

JUAN HERRERA-SANTOS

DEFENDANT.

# INDICTMENT

Title 8, United States Code, section 1326 - Illegal
Reentry by an Alien After Deportation (Class C Felony)

A true bill.

_____ Foreman

Filed in open court this 4 day of
Dec, 2007

**Brenda Tolbert**
Clerk

MARIA-ELENA JAMES

Bail, $ No Arrest

AO 257 (Rev. 6/78)

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ COMPLAINT  ☐ INFORMATION  ☑ INDICTMENT  ☐ SUPERSEDING

**OFFENSE CHARGED**

Title 8 U.S.C., Section 1326 -
Illegal Reentry by an Alien After
Deportation (Class C Felony)

☐ Petty
☐ Minor
☐ Misdemeanor
☑ Felony

E-filing

**PENALTY:**
Maximum Prison Term of 20 Years;
Maximum Fine $250,000;
Maximum Term of Supervised Release of 3 Years;
Mandatory Special Assessment of $100.

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA

**DEFENDANT - U.S.**

▶ JUAN HERRERA-SANTOS

DISTRICT COURT NUMBER

CR 07    0764    SI

**PROCEEDING**

Name of Complaintant Agency, or Person (&Title, if any)
Department of Homeland Security/Immigration Customs Enforcement

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. Att'y  ☐ Defense

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☑ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under ▶

MAGISTRATE CASE NO.
07-70692

Name and Office of Person Furnishing Information on THIS FORM    **SCOTT N. SCHOOLS**
☑ U.S. Att'y  ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)    TAREK HELOU

**DEFENDANT**

**IS NOT IN CUSTODY**
1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

NORTHERN DISTRICT OF CALIFORNIA

**IS IN CUSTODY**
4) ☑ On this charge
5) ☐ On another conviction
6) ☐ Awaiting trial on other charges  } ☐ Fed'l  ☐ State

If answer to (6) is "Yes", show name of Institution

Has detainer been filed?  ☐ Yes  ☐ No  } If "Yes" give date filed

**DATE OF ARREST** ▶    Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶    Month/Day/Year
11/13/2007

☐ This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☑ NO PROCESS*  ☐ WARRANT    Bail Amount: No bail

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:

Before Judge:

Comments:

**ORIGINAL**

1  SCOTT N. SCHOOLS (SCBN 9990)
   United States Attorney
2
3                                                    FILED
4                                                    07 DEC -4 PM 1:41
                                                     RICHARD W. WIEKING
                                                     CLERK, U.S. DISTRICT COURT
                                                     NORTHERN DISTRICT OF CALIFORNIA
5
6                       **E-filing**
7
8                UNITED STATES DISTRICT COURT
9               NORTHERN DISTRICT OF CALIFORNIA
10                   SAN FRANCISCO DIVISION
11
12  UNITED STATES OF AMERICA,     )  No. CR 07 0764 SI
                                  )
13       Plaintiff,                )  VIOLATION: 8 U.S.C. § 1326 – Illegal
                                  )  Reentry Following Deportation
14       v.                        )
                                  )
15  JUAN HERRERA-SANTOS,          )  SAN FRANCISCO VENUE
                                  )
16       Defendant.                )
                                  )
17  _____)

18                  INDICTMENT

19  The Grand Jury charges:

20         On or about October 3, 2001, September 7, 2002, April 9, 2003, April 22, 2005, July 1,

21  2005, November 30, 2005, November 28, 2006, and February 22, 2007, the defendant,

22                       JUAN HERRERA-SANTOS,

23  an alien, was excluded, deported and removed from the United States, and thereafter, on or about

24  September 17, 2007, was found in the Northern District of California, the Attorney General of the

25  United States and the Secretary for Homeland Security not having expressly consented to a re-

26  //
27  //
28  //

INDICTMENT                          1

1 | application by the defendant for admission into the United States, in violation of Title 8, United
2 | States Code, Section 1326.

4 | DATED: December 9, 2007        A TRUE BILL.

                                                                           FOREPERSON

7 | SCOTT N. SCHOOLS
   | United States Attorney

10 | KYLE F. WALDINGER
    | Deputy Chief, Major Crimes Section

12 | (Approved as to form: _____ )
                               AUSA HELOU

INDICTMENT                                2

# EXHIBIT B

## 8 U.S.C.A. § 1326

(a) In general

Subject to subsection (b) of this section, any alien who--

> (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
>
> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned **not more than 2 years**, or both.

(b) Criminal penalties for reentry of certain removed aliens

Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--

> (1) whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both;
>
> (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both;
>
> (3) who has been excluded from the United States pursuant to section 1225(c) of this title because the alien was excludable under section 1182(a)(3)(B) of this title or who has been removed from the United States pursuant to the provisions of subchapter V of this chapter, and who thereafter, without the permission of the Attorney General, enters the United States, or attempts to do so, shall be fined under Title 18 and imprisoned for a period of 10 years, which sentence shall not run concurrently with any other sentence. [FN1] or

>(4) who was removed from the United States pursuant to section 1231(a)(4)(B) of this title who thereafter, without the permission of the Attorney General, enters, attempts to enter, or is at any time found in, the United States (unless the Attorney General has expressly consented to such alien's reentry) shall be fined under Title 18, imprisoned for not more than 10 years, or both.

For the purposes of this subsection, the term "removal" includes any agreement in which an alien stipulates to removal during (or not during) a criminal trial under either Federal or State law.

(c) Reentry of alien deported prior to completion of term of imprisonment

Any alien deported pursuant to section 1252(h)(2) [FN2] of this title who enters, attempts to enter, or is at any time found in, the United States (unless the Attorney General has expressly consented to such alien's reentry) shall be incarcerated for the remainder of the sentence of imprisonment which was pending at the time of deportation without any reduction for parole or supervised release. Such alien shall be subject to such other penalties relating to the reentry of deported aliens as may be available under this section or any other provision of law.

(d) Limitation on collateral attack on underlying deportation order

In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that--

>(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

>(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

>(3) the entry of the order was fundamentally unfair.

8 USC § 1326 (West 2007)

EXHIBIT C

Case 3:07-cr-00764-SI    Document 6-2    Filed 12/07/2007    Page 10 of 17

Westlaw.

--- F.3d ----                                                                                                    Page 1
--- F.3d ----, 2007 WL 3085906 (C.A.9 (Cal.)), 07 Cal. Daily Op. Serv. 12,467, 2007 Daily Journal D.A.R. 16,115
**(Cite as: --- F.3d ----)**

U.S. v. Salazar-Lopez
C.A.9 (Cal.),2007.

United States Court of Appeals,Ninth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Manuel SALAZAR-LOPEZ, Defendant-Appellant.
**No. 06-50438.**

Argued and Submitted May 16, 2007.
Filed Oct. 24, 2007.

**Background:** Defendant was convicted in the United States District Court for the Southern District of California, Marilyn L. Huff, J., of being previously removed alien found in United States, and he appealed.

**Holdings:** The Court of Appeals, Clifton, Circuit Judge, held that:

[(1)](#) government was required under *Apprendi* to allege in indictment dates of defendant's prior removal and of his felony conviction, but

[(2)](#) government's failure to do so was harmless error.

Affirmed.

**[1] Criminal Law 110 ⚷1139**

110 Criminal Law
    110XXIV Review
        110XXIV(L) Scope of Review in General
            110k1139 k. Additional Proofs and Trial De Novo. Most Cited Cases
Preserved *Apprendi* challenges are reviewed de novo.

**[2] Indictment and Information 210 ⚷113**

210 Indictment and Information
    210V Requisites and Sufficiency of Accusation
        210k113 k. Matter of Aggravation in General. Most Cited Cases

**Jury 230 ⚷34(7)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
                230k34(5) Sentencing Matters
                    230k34(7) k. Particular Cases in General. Most Cited Cases
Government was required under *Apprendi* to allege in indictment and prove to jury dates of defendant's previous felony conviction and of his previous removal from United States in order for defendant convicted of being previously removed alien found in United States to be subject to increased sentence on ground that his prior removal was subsequent to his felony conviction. Immigration and Nationality Act, § 276(b), 8 U.S.C.A. § 1326(b).

**[3] Criminal Law 110 ⚷1166(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(Q) Harmless and Reversible Error
            110k1166 Preliminary Proceedings
                110k1166(1) k. In General. Most Cited Cases

**Criminal Law 110 ⚷1167(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(Q) Harmless and Reversible Error
            110k1167 Rulings as to Indictment or Pleas
                110k1167(1) k. Indictment or Information in General. Most Cited Cases
Government's *Apprendi* error in seeking enhanced sentence in prosecution for being previously removed alien found in United States without alleging in indictment and proving to jury dates of defendant's previous felony conviction and of his previous removal from United States was subject to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cr-00764-SI   Document 6-2   Filed 12/07/2007   Page 11 of 17

--- F.3d ----  Page 2
--- F.3d ----, 2007 WL 3085906 (C.A.9 (Cal.)), 07 Cal. Daily Op. Serv. 12,467, 2007 Daily Journal D.A.R. 16,115
(Cite as: --- F.3d ----)

harmless error analysis. Immigration and Nationality Act, § 276(b), 8 U.S.C.A. § 1326(b).

**[4] Criminal Law 110 €⎯1166(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(Q) Harmless and Reversible Error
            110k1166 Preliminary Proceedings
                110k1166(1) k. In General. Most Cited Cases

**Criminal Law 110 €⎯1167(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(Q) Harmless and Reversible Error
            110k1167 Rulings as to Indictment or Pleas
                110k1167(1) k. Indictment or Information in General. Most Cited Cases

Government's *Apprendi* error in seeking enhanced sentence in prosecution for being previously removed alien found in United States without alleging in indictment and proving to jury dates of defendant's previous felony conviction and of his previous removal from United States was harmless, where evidence that defendant was removed after his felony conviction was overwhelming. Immigration and Nationality Act, § 276(b), 8 U.S.C.A. § 1326(b).

Carey D. Gorden (argued), Federal Defenders of San Diego, Inc., San Diego, CA, for appellant.
Karen P. Hewitt, United States Attorney; Bruce R. Castetter, Assistant United States Attorney; Christopher P. Tenorio (argued), Assistant United States Attorney, San Diego, CA, for appellee.

Appeal from the United States District Court for the Southern District of California; Marilyn L. Huff, District Judge, Presiding. D.C. No. CR-05-01834-MLH.

Before: RAYMOND C. FISHER and RICHARD R. CLIFTON, Circuit Judges, and JEREMY D. FOGEL,[FN*] District Judge.
CLIFTON, Circuit Judge:

*1 We decide two questions. First, for a defendant convicted of being a previously removed alien found in the United States, in violation of 8 U.S.C. § 1326, we must resolve whether the dates of a previous felony conviction and of a previous removal from the United States, subsequent to that conviction, must be alleged in the indictment and proved to a jury for the defendant to be subject to an increased sentence under 8 U.S.C. § 1326(b). We answer that question in the affirmative. Second, we consider whether such an error, in a context that affects only sentencing, is subject to harmless error analysis. We answer that question in the affirmative, as well. Since we hold that the error here was harmless, we affirm the sentence imposed by the district court on this defendant.[FN1]

**I. Background**

After being apprehended by the Border Patrol about two miles north of the U.S.-Mexico border on September 13, 2005, Manuel Salazar-Lopez was charged with one count of being a previously removed alien "found in" the United States in violation of 8 U.S.C. § 1326. The indictment did not allege that Salazar-Lopez had been previously removed subsequent to a felony conviction, nor did it allege a specific date for Salazar-Lopez's prior removal.

At trial, the Government introduced four pieces of evidence to prove that Salazar-Lopez had been removed prior to this arrest: (1) an order of an immigration judge from 2002, ordering that Salazar-Lopez be removed from the United States; (2) a warrant of removal from 2002, bearing Salazar-Lopez's photograph, signature, and fingerprint; (3) a notice of reinstatement of the 2002 order; and (4) a warrant of removal dated December 8, 2004, also bearing Salazar-Lopez's picture, fingerprint, and signature. In addition, the signature of Immigration and Customs Enforcement Agent Lucas Leal was also on the 2004 warrant, which, according to Leal's testimony, indicated that Leal had witnessed Salazar-Lopez's departure back to Mexico on May 31, 2005.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cr-00764-SI   Document 6-2   Filed 12/07/2007   Page 12 of 17

--- F.3d ----
--- F.3d ----, 2007 WL 3085906 (C.A.9 (Cal.)), 07 Cal. Daily Op. Serv. 12,467, 2007 Daily Journal D.A.R. 16,115
**(Cite as: --- F.3d ----)**

Page 3

After Salazar-Lopez was convicted, the probation officer filed a pre-sentence report recommending that Salazar-Lopez be sentenced under 8 U.S.C. § 1326(b)(1), because the 2005 removal was subsequent to a 2003 felony conviction. Salazar-Lopez objected, arguing that only the two-year maximum under § 1326(a), and not the ten-year maximum provided for in § 1326(b)(1),FN2 was applicable to his case, because the facts necessary to sustain § 1326(b)(1)'s sentencing enhancement had not been charged in the indictment and proved beyond a reasonable doubt to a jury. The district court rejected Salazar-Lopez's argument and largely adopted the pre-sentence report's sentencing calculations, with the exception that the court decreased Salazar-Lopez's offense level by two for acceptance of responsibility. Salazar-Lopez was sentenced to 21 months of imprisonment and three years of supervised release.

### II. Analysis

[1] Because Salazar-Lopez made a timely challenge to his sentence below, he has properly preserved his claim of error. "Preserved *Apprendi* challenges are reviewed de novo." *United States v. Hollis,* 490 F.3d 1149, 1154 (9th Cir.2007) (citing *United States v. Smith,* 282 F.3d 758, 771 (9th Cir.2002)).

#### A. The Sixth Amendment Violation

*2 [2] An alien found in the United States after having previously been removed violates 8 U.S.C. § 1326. The maximum statutory penalty under § 1326 is two years of imprisonment and one year of supervised release, unless the previous removal was subsequent to certain types of convictions. *See* 8 U.S.C. § 1326(a),(b); 18 U.S.C. §§ 3583(b), 3559(a). In this case, the district court found that Salazar-Lopez had been removed after such a felony conviction, and so it determined that the applicable statutory maximum was ten years of imprisonment and three years of supervised release. 8 U.S.C. § 1326(b)(1), 18 U.S.C. §§ 3583(b), 3559(a). On appeal, Salazar-Lopez renews his contention that his exposure to § 1326(b)'s higher statutory maximum violated *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because neither the date of his prior removal nor the temporal relationship between the removal and his prior conviction was alleged in the indictment and proved to a jury.FN3 We agree that an *Apprendi* error occurred here.

In *United States v. Covian-Sandoval,* 462 F.3d 1090, 1096-98 (9th Cir.2006), we recognized that the fact of a prior conviction need not have been submitted to the jury under *Almendarez-Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), but nevertheless held that an *Apprendi* error had occurred where the date of a prior removal (necessary to determine whether the removal had *followed* the conviction in time) was not admitted by the defendant or found by a jury. A similar error is present here, since the jury was presented with evidence of two removals, one which preceded Salazar-Lopez's felony conviction and one which followed, and was never asked to find that the later removal had indeed occurred. *Cf. United States v. Martinez-Rodriguez,* 472 F.3d 1087, 1093-94 (9th Cir.2007) (finding no error even though the jury did not find an exact date of removal, because both removals put before the jury were subsequent to the defendant's felony conviction).FN4 Salazar-Lopez's case differs slightly from *Covian-Sandoval,* however, because the error to which he points on appeal is not only that the jury never made the required finding but also that the Government never alleged in the indictment that he had been removed on a specific, post-conviction date.

Such an allegation was required. *See United States v. Cotton,* 535 U.S. 625, 627, 632, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). As we noted in *United States v. Jordan,* 291 F.3d 1091, 1095 (9th Cir.2002), our decision in *United States v. Buckland,* 289 F.3d 558 (9th Cir.2002) (en banc), "answered for our circuit the question left open by the Supreme Court in *Apprendi,* by holding that any fact other than a prior conviction that increases the maximum penalty for a federal crime must also be charged in an indictment." Here, the temporal relationship between Salazar-Lopez's removal and his

--- F.3d ----
--- F.3d ----, 2007 WL 3085906 (C.A.9 (Cal.)), 07 Cal. Daily Op. Serv. 12,467, 2007 Daily Journal D.A.R. 16,115
(Cite as: --- F.3d ----)

Case 3:07-cr-00764-SI     Document 6-2     Filed 12/07/2007     Page 13 of 17

Page 4

previous conviction was a fact that increased the maximum sentence that he faced. As such, the date of the removal, or at least the fact that Salazar-Lopez had been removed *after* his conviction, should have been alleged in the indictment and proved to the jury. The failure to do so was an *Apprendi* error.

*B. Harmless Error*

***3** Having found such an error, we are faced with the question of whether this error is amenable to harmless error review or is instead a "structural error" automatically entitling Salazar-Lopez to a resentencing. Salazar-Lopez contends that it is a structural error, while the Government asserts that harmless error analysis is appropriate and, furthermore, that the error here was indeed harmless.

The Supreme Court has not squarely resolved this question. Although it identified the question in *Cotton,* the fact that the Court was reviewing for plain error in that case meant that it did not have to decide whether this type of flaw in the indictment is a structural error. *Id.* at 632-33, 122 S.Ct. 1781.Instead, the Court skipped to the plain error test's fourth prong and held that failing to allege a fact relevant to the statutory maximum and submit it to the jury did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings" because the evidence on the particular factual issue in *Cotton,* drug quantity, was "overwhelming and essentially uncontroverted." *Id.* at 632-33, 122 S.Ct. 1781 (internal quotation marks omitted).

The Court's more recent decision in *Washington v. Recuenco,* --- U.S. ----, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), is also illustrative, although not completely dispositive. In *Recuenco,* the Court held that harmless error analysis did apply to errors arising under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), reversing the Supreme Court of Washington's decision to the contrary. *Recuenco* does not squarely foreclose Salazar-Lopez's argument, though, because the Court there was focused on the error of "fail[ing] to submit a sentencing factor to the jury," and did not consider *Recuenco* as "a case of charging error." *Id.* at 2252 n. 3; *at 2553*; *see also id.* at 2554 (Stevens, J., dissenting) (characterizing majority opinion as avoiding the issue of sufficient notice through the indictment). Although *Cotton* and *Recuenco* strongly suggest that harmless error analysis ought to apply here, they do not, by themselves, dispose of Salazar-Lopez's contention.

Salazar-Lopez argues that our decision in *United States v. Du Bo,* 186 F.3d 1177 (9th Cir.1999), requires that we treat the current indictment error as a structural error demanding an automatic resentencing. We held in *Du Bo* "that, if properly challenged prior to trial, an indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment."*Id.* at 1179.The reach of *Du Bo* has been limited somewhat, as we have distinguished it from situations where the challenge to the indictment was untimely, because no objection was made at trial. *United States v. Velasco-Medina,* 305 F.3d 839, 846-47 (9th Cir.2002) (applying plain error review to an indictment's failure to allege an element of the crime, and refusing relief because the defendant suffered no prejudice from the omission). We have, however, continued to apply the central holding of *Du Bo* to dismiss indictments in the face of timely challenges.*United States v. Omer,* 395 F.3d 1087 (9th Cir.2005), *cert. denied,*--- U.S. ----, 127 S.Ct. 1118, 166 L.Ed.2d 906 (2007).

**4** We have a precedent more analogous to the current case than *Du Bo,* however, and that is *Jordan,* 291 F.3d at 1094-97.There, we held first that because "[d]rug quantity was neither charged in the indictment, nor submitted to the jury and proved beyond a reasonable doubt," the district court had erred in using the statutory maximum applicable to 50 or more grams of methamphetamine rather than that applicable to an indeterminate quantity.*Id.* at 1095.Because the defendant in *Jordan* had, as Salazar-Lopez has here, objected to the presentence report on the basis of this error, the *Jordan* court considered the error preserved. *Id.* at 1094,

--- F.3d ----
--- F.3d ----, 2007 WL 3085906 (C.A.9 (Cal.)), 07 Cal. Daily Op. Serv. 12,467, 2007 Daily Journal D.A.R. 16,115
(Cite as: --- F.3d ----)

Case 3:07-cr-00764-SI    Document 6-2    Filed 12/07/2007    Page 14 of 17

Page 5

1095.As a result, we reviewed the sentence not "for plain error, but instead for harmless error."*Id.* at 1095.We stated in *Jordan* that a defendant's "sentence 'cannot stand unless the district court's constitutional *Apprendi* error was harmless beyond a reasonable doubt.'"*Id.* (quoting *United States v. Garcia-Guizar,* 234 F.3d 483, 488 (9th Cir.2000)); *see also Hollis,* 490 F.3d at 1154-57 (finding an *Apprendi* error where the indictment failed to allege, and the jury did not find, drug type with adequate specificity, but holding that this error was harmless). The question here is whether Salazar-Lopez's case is controlled by *Jordan* or *Du Bo*.

[3] We conclude that *Jordan* controls, and thus that harmless error analysis does apply. First and foremost, the procedural history of this case, the nature of Salazar-Lopez's challenge, and the nature of the relief he requests mirror *Jordan* much more closely than *Du Bo*. Like *Jordan,*Salazar-Lopez raised his *Apprendi* claim post-trial in his objections to the pre-sentence report, *see Jordan,* 291 F.3d at 1094-95, whereas in *Du Bo* the defendant objected to the indictment "[m]ore than two months before trial,"*see Du Bo,* 186 F.3d at 1179.Salazar-Lopez has consistently sought sentencing relief for this flaw in the indictment, as in *Jordan,* 291 F.3d at 1094, while the relief sought by *Du Bo* was to reverse the judgment as a whole and dismiss the flawed indictment, *Du Bo,* 186 F.3d at 1181.Ultimately, the real substance of Salazar-Lopez's claimed error is more akin to a "[f]ailure to submit a sentencing factor to the jury," as opposed to "charging error," *see Recuenco,* 126 S.Ct. at 2552 n. 3, 2553;*cf. United States v. Zepeda-Martinez,* 470 F.3d 909 (9th Cir.2006) (holding that a properly preserved *Apprendi* error, of failing to submit the temporal relationship between a removal and a prior conviction in a § 1326 prosecution, should be reviewed for harmless error).

In addition, the logical underpinnings of *Du Bo* do not counsel for an extension of *Du Bo* to the sentencing context. The conclusion in *Du Bo* was compelled largely by two rationales: (1) that the question of whether a grand jury might have indicted on an additional element was not amenable to harmless error review; and (2) that subjecting timely objections to harmless error analysis would destroy any incentive on the part of a defendant to object, since objecting would indicate an awareness of the missing element and hence the harmlessness of the omission.[FN5]*Du Bo,* 186 F.3d at 1179-80, 1180 n. 3.

**\*5** As for the first rationale, *Jordan* recognized the difficulty of anticipating what a grand jury would have done if faced with a close factual allegation, and indeed that consideration was part of the reason that the *Jordan* court ultimately concluded that it could not hold the *Apprendi* error there, as to drug quantity, harmless.[FN6]*See Jordan,* 291 F.3d at 1096.As *Jordan* illustrated, there may be cases where the failure to include a relevant fact in the indictment makes any conclusion as to harmlessness too speculative, but the existence of that potential difficulty need not preclude the use of harmless error analysis in every case. *Cf. Cotton,* 535 U.S. at 632-33, 122 S.Ct. 1781 (refusing to find that a failure to allege drug quantity "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings" where the evidence "was 'overwhelming' and 'essentially uncontroverted,' " so that "[s]urely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base") (quoting *Johnson v. United States,* 520 U.S. 461, 470, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). Additionally, while the grand jury's restraining function-which *Du Bo* emphasized, 186 F.3d at 1179-is no doubt important, the Supreme Court has since recognized that the "check on prosecutorial power" provided by "the Fifth Amendment grand jury right" is "surely no less true of the Sixth Amendment right to a petit jury, which, unlike the grand jury, must find guilt beyond a reasonable doubt,"*Cotton,* 535 U.S. at 634, 122 S.Ct. 1781.Yet the failure to submit elements to the petit jury is reviewed for harmlessness. *Neder v. United States,* 527 U.S. 1, 8-15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Given that the "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error,"*Recuenco,* 126 S.Ct. at 2553, we feel comfort-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cr-00764-SI    Document 6-2    Filed 12/07/2007    Page 15 of 17

--- F.3d ----    Page 6
--- F.3d ----, 2007 WL 3085906 (C.A.9 (Cal.)), 07 Cal. Daily Op. Serv. 12,467, 2007 Daily Journal D.A.R. 16,115
**(Cite as: --- F.3d ----)**

able that Salazar-Lopez's asserted error can be adequately handled under the harmless error framework employed by *Jordan,* so that no extension of *Du Bo* to the sentencing context is needed.

*Du Bo*'s second rationale, the encouragement of timely objections to indictment deficiencies, is also inapplicable here. In this case, Salazar-Lopez's objections to the indictment were timely for sentencing purposes (and hence preserved the sentencing claim for our review), but were made only after the conclusion of his trial. To allow an omission in the indictment, raised only after the completion of the trial, to result in an automatic cap on the defendant's sentence would encourage defendants to remain silent at the time when an indictment could reasonably be amended to present the necessary allegations-the exact opposite of the result *Du Bo* hoped to achieve.

In light of the Supreme Court's discussions in *Cotton* and *Recuenco,* and the striking similarity of this case to *Jordan,* we view *Du Bo* to be distinguishable. *Du Bo* addressed only timely challenges to the sufficiency of the indictment, not the instant *Apprendi* sentencing error that Salazar-Lopez raises. We hold that *Jordan* controls Salazar-Lopez's case, and thus we must inquire as to whether the failure to allege and prove to the jury the temporal relationship between Salazar-Lopez's prior conviction and his removal was harmless error.

*6 [4] On this record, we hold that the error in the indictment was indeed harmless. The evidence supporting Salazar-Lopez's later removal is "overwhelming and uncontroverted," *Zepeda-Martinez,* 470 F.3d at 913. At trial, the government introduced a warrant of removal showing that Salazar-Lopez was ordered removed on December 8, 2004, and was physically removed to Mexico on May 31, 2005. The warrant bore Salazar-Lopez's name, immigration identification number, photograph, signature, and fingerprint. We noted in *Zepeda-Martinez* that "[t]his warrant is sufficient alone to support a finding of removal beyond a reasonable doubt." *Id.* (citing *United States v. Bahena-Cardenas,* 411 F.3d 1067, 1075 (9th Cir.2005)). Here, there is even more evidence of Salazar-Lopez's later removal, as the Government produced at trial the immigration officer who executed this warrant. That officer identified his signature on the warrant, and testified that this signature indicated that he had witnessed Salazar-Lopez leave the United States on May 31, 2005. At trial, Salazar-Lopez did not produce any evidence or argument, beyond general suggestions of possible clerical errors relating to the storage and upkeep of his file, to cast doubt on the authenticity of this evidence.[FN7]

Although we do not consider new admissions made at sentencing in our harmless error inquiry, *Jordan,* 291 F.3d at 1097, we do consider sentencing proceedings insofar as they would help us adduce what other evidence might have been produced at trial, had the question been properly put before the jury, *Zepeda-Martinez,* 470 F.3d at 913 & n. 3. Here, because the pre-sentence report recommended that Salazar-Lopez's offense level be increased by four for a previous deportation subsequent to a felony conviction, pursuant to U.S. Sentencing Guidelines § 2L1.2(b)(1)(D), the issue of the temporal relationship between his last removal and his prior conviction was squarely raised at Salazar-Lopez's sentencing. Salazar-Lopez, however, made no factual attack on the applicability of this increase. While there may be some cases and issues, such as the drug quantity question in *Jordan,* 291 F.3d at 1096-97, where the record will be too indeterminate for us to conclude what result would have been obtained had the question been properly placed before the grand and petit juries, this particular question concerning the date of one of Salazar-Lopez's removals is not one of them. In light of the record here, "we are satisfied beyond a reasonable doubt that ... the result 'would have been the same absent the error.'"*Zepeda-Martinez,* 470 F.3d at 913-14 (quoting *Neder,* 527 U.S. at 19, 119 S.Ct. 1827).

### III. Conclusion

Although the temporal relationship between Salazar-Lopez's removal and his prior conviction should have been alleged in the indictment and proved to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the jury, we nevertheless affirm the sentence imposed because we find that this error was harmless in his case.

**AFFIRMED.**

FN* The Honorable Jeremy D. Fogel, United States District Judge for the Northern District of California, sitting by designation.

FN1. In this opinion we address only Salazar-Lopez's sentencing contentions. We resolve his challenge to his conviction in an accompanying memorandum disposition.

FN2. This difference in statutory maximum sentences also results in a difference as to the maximum term of supervised release that can be imposed. Because § 1326(a) has a maximum sentence of two years, only one year of supervised release can follow the prison term, while the higher statutory maximum of § 1326(b)(1) means that the imposition of up to three years of supervised release is permitted. *See* 8 U.S.C. § 1326(a), (b); 18 U.S.C. §§ 3583(b), 3559(a).

FN3. Salazar-Lopez's other sentencing contentions, that we ought to limit *Almendarez-Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), to its facts under the doctrine of constitutional doubt, that *Almendarez-Torres* has been overruled, and that § 1326(b) is unconstitutional, are foreclosed by Ninth Circuit precedent. *United States v. Covian-Sandoval,* 462 F.3d 1090, 1096-97 (9th Cir.2006) (citing *United States v. Beng-Salazar,* 452 F.3d 1088 (9th Cir.2006); *United States v. Diaz-Argueta,* 447 F.3d 1167, 1170 (9th Cir.2006); *United States v. Rodriguez-Lara,* 421 F.3d 932, 949-50 (9th Cir.2005)).

FN4. The Government argues that we should not follow *Covian-Sandoval* because it conflicts with other Circuit precedent. We see no conflict with the first case the Government cites, *United States v. Castillo-Rivera,* 244 F.3d 1020, 1025 (9th Cir.2001).*Castillo-Rivera* addressed only the continuing viability of the *Almendarez-Torres* exception for prior convictions, not whether the date of removal (as opposed to the date of the conviction) had to be found by a jury. *See id.*The second case cited by the Government, *United States v. Lopez,* 469 F.3d 1241 (9th Cir.2006), did initially contain some potentially confusing language on this issue, but that opinion was amended, 500 F.3d 840 (9th Cir.2007), in a way that clarified the vitality of *Covian-Sandoval* and its application to that case, *id.* at 848-49.

FN5. To the extent *Du Bo* was premised on indictment errors being jurisdictional, *see Du Bo,* 186 F.3d at 1180;*see also United States v. Omer,* 429 F.3d 835, 836 (9th Cir.2005) (Graber, J., dissenting from denial of rehearing en banc), that rationale has been overruled by the Supreme Court in *Cotton,* 535 U.S. at 629-31, 122 S.Ct. 1781;*see also Omer,* 429 F.3d at 837 (Graber, J., dissenting from denial of rehearing en banc).

FN6. As we noted in *Jordan,* when the indictment fails to make the requisite allegation:
[W]e would first have to determine whether the grand jury would have indicted the defendant for over 50 grams.... Then, because Jordan had no notice from the indictment that quantity would be an issue at trial, we would need to determine whether Jordan might have contested quantity and what evidence[he] might have presented. Finally, to affirm the sentence, we would need to be able to say beyond any reasonable doubt that a jury, considering the ac-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2007 WL 3085906 (C.A.9 (Cal.)), 07 Cal. Daily Op. Serv. 12,467, 2007 Daily Journal D.A.R. 16,115
**(Cite as: --- F.3d ----)**

Page 8

tual evidence at trial and perhaps other evidence that was never presented, would have convicted [him] of the higher-quantity offense.

Here, we cannot reasonably conclude that these issues can be answered fairly based on reason and the record presented. When quantity is neither alleged in the indictment nor proved to a jury beyond a reasonable doubt, there are too many unknowns to be able to say with any confidence, let alone beyond reasonable doubt, that the error was harmless.

291 F.3d at 1096.

FN7. We do not suggest that evidence of such errors, attacking the accuracy or veracity of documents such as the warrant of removal, could never give rise to reasonable doubt concerning whether a removal had occurred. We hold only that Salazar-Lopez's showing on this point, in his particular case, was so weak as to not disturb our conclusion of harmlessness.

C.A.9 (Cal.),2007.
U.S. v. Salazar-Lopez
--- F.3d ----, 2007 WL 3085906 (C.A.9 (Cal.)), 07 Cal. Daily Op. Serv. 12,467, 2007 Daily Journal D.A.R. 16,115

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.