BARRY J. PORTMAN
Federal Public Defender
STEVEN G. KALAR
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant Herrera-Santos

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JUAN HERRERA-SANTOS,<br><br>    Defendant. | No. CR 07-0764 SI<br><br>DEFENDANT'S REPLY RE: ARRAIGNMENT ON IMPROPER STATUTORY MAXIMUM SENTENCES<br><br>**Hearing Date**: Dec. 19, 2007 |

**Table of Contents**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    The *Herrera-Santos* Indictment Does Not Allege an Offense Carrying a Twenty-Year Statutory Maximum Penalty or Three Years of Supervised Release . . . . . . . 2

II.   It is Improper for the Government to Argue "Harmless Error" Outside of the Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  A Magistrate Court that Advises Defendants of the Maximum Statutory Penalty Must Do So Correctly . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.  The Northern District of California United States Attorney's Office is the Only USAO in California that Does Not Indict in Conformance with *Salazar-Lopez* . . 9

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Herrera-Santos*, CR 07-0764 SI
DEF. REPLY RE: MOT.
PROPER ARRAIGNMENT                    i

## Table of Authorities

### Federal Cases

*United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Gray*, 611 F.2d 194 (7th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Jordan*, 291 F.3d 1091 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Salazar-Lopez*, 506 F.3d 748 (9th Cir. 2007) . . . . . . . . . . . . . . . . *passim*

### Federal Statutes

8 U.S.C. § 1326 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3559(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 3583(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Crim. P. 6(e)(3)(E)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Crim. P. 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

### Miscellaneous

ABA Model Rules of Professional Conduct (Model Rules) Rule 3.8 . . . . . . . . . . . . . . . . 6

1  BARRY J. PORTMAN
   Federal Public Defender
2  STEVEN G. KALAR
3  Assistant Federal Public Defender
   450 Golden Gate Avenue
4  San Francisco, CA 94102
5  Telephone: (415) 436-7700

6  Counsel for Defendant Herrera-Santos

7

8             IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 UNIVERSITY STATES OF AMERICA,       ) No. CR 07-0764 SI
                                       )
12      Plaintiff,                     )
                                       ) DEFENDANT'S REPLY RE:
13      v.                             ) ARRAIGNMENT ON
                                       ) IMPROPER STATUTORY
14 JUAN HERRERA-SANTOS,                ) MAXIMUM SENTENCES
                                       )
15      Defendant.                     )
                                       ) **Hearing Date**: Dec. 19, 2007

16                         **Introduction**

17      The United States Attorney's Office for the Northern District of California is the
18 only USAO in California that has not changed its illegal reentry indictments to reflect the
19 requirements of *Salazar-Lopez*. The problems presented by the government's Opposition
20 illustrate why every other USAO in the state now simply indicts these cases correctly.
21      The government's Opposition betrays a fundamental misunderstanding of the
22 precepts of *Apprendi*, and is directly contrary to the controlling decision of *United States*
23 *v. Salazar-Lopez*, 506 F.3d 748 (9th Cir. 2007). Of equal concern, the Opposition
24 improperly relies on a harmless error standard that is only relevant on appeal.
25      This Court should decline the government's invitation to advise illegal reentry
26 defendants of erroneous maximum penalties, and should re-arraign Mr. Herrera-Santos
27 with the correct advisement: that the offense for which he is now charged carries a two-
28 year statutory maximum sentence.

*Herrera-Santos*, CR 07-0764 SI
DEF. REPLY RE: MOT.
PROPER ARRAIGNMENT

**Discussion**

**I. The *Herrera-Santos* Indictment Does Not Allege an Offense Carrying a Twenty-Year Statutory Maximum Penalty or Three Years of Supervised Release**

The government's reading of *Salazar-Lopez* is incorrect, and squarely contradicts the language and holding of the decision. In its Opposition, the government asserts:

> The Ninth Circuit affirmed the [Salazar-Lopez] sentence based on harmless error, holding that the indictment should have alleged 'the date of the removal, or at least the fact that [the defendant] had been removed *after* his conviction" . . . *Nothing in the opinion supports the defendant's claim that the indictment must allege both.*

*Gov't Opp*. at 5:23-26 (emphasis added).

This is a remarkable assertion, given the first paragraph of the *Salazar-Lopez* decision:

> [F]or a defendant convicted of being a previously removed alien found in the United States, in violation of 8 U.S.C. § 1326, we must resolve whether *the dates of a previous felony conviction **and** of a previous removal from the United States, subsequent to that conviction, must be alleged in the indictment* and proved to a jury for the defendant to be subject to an increased sentence under 8 U.S.C. § 1326(b). We answer that question in the affirmative.

*United States v. Salazar-Lopez*, 506 F.3d 748, 749-50 (9th Cir. 2007) (emphases added).

The Ninth Circuit's articulation of the issue in *Salazar-Lopez* was clear; its holding, emphatic. An indictment that seeks to create the higher statutory maximum sentences contemplated in Section 1326(b) must allege the date of a previous conviction for an enumerated offense and the date of a previous removal that is subsequent to that conviction. *Id.* For the government to assert that "nothing in the opinion supports the defendant's claim that the indictment must allege both" ignores the core issue and central holding of the decision.

The government's Opposition reassures the Court that "[b]ecause the indictment in this case alleges eight dates of removal, it satisfies *Salazar-Lopez*. The judge can determine whether the felony conviction or aggravated felony conviction occurred after the removal date found by jury." *Gov't Opp.* at 5-6.

*Herrera-Santos*, CR 07-0764 SI
DEF. REPLY RE: MOT.
PROPER ARRAIGNMENT                2

1   This argument misapprehends the *Apprendi* error in *Salazar-Lopez*, and repeats the
2 error in the present case. Plainly stated, there is an enhancement fact in Section 1326 of
3 Title Eight that increases the statutory maximum sentence from two years to ten, or to
4 twenty, years. That enhancement fact is not the date of a prior enumerated conviction, nor
5 is it – as the government contends – the date of a removal from the United States. *See*
6 *Gov't Opp.* at 5-6. The enhancement fact that increases the statutory maximum sentence
7 in Section 1326 is instead "the temporal relationship between [an alien's] removal and his
8 previous conviction." *Salazar-Lopez*, 506 F.3d at 752. It is not enough that an alien
9 suffered a conviction for one of the enumerated offenses, or that he was removed. Instead,
10 the grand jury must be presented with evidence, and must allege in an indictment, that the
11 alien's removal *followed* a conviction for one of the enumerated offenses in order to
12 trigger the dramatically higher statutory maximum sentences. *Id.* ("As such, the date of
13 the removal, or at least the fact that Salazar-Lopez had been removed *after* his conviction,
14 should have been alleged in the indictment and proved to the jury.") (emphasis in
15 original).
16   It is undisputed that the *Herrera-Santos* indictment now before the Court does not
17 allege that the defendant was removed after suffering a conviction for an enumerated
18 offense. As such, it omits the core enhancement fact that was at the heart of the *Salazar-*
19 *Lopez* decision: the temporal relationship between conviction and removal. Without that
20 enhancement fact the indictment before the Court alleges a valid crime that carries a two
21 year statutory maximum sentence and one year period of supervised release. The Court's
22 earlier advisement of a twenty year statutory maximum sentence and a three year term of
23 supervised release (at the request of the government) was erroneous. The defendant
24 should be re-arraigned, and informed of the correct statutory penalties, at the next
25 appearance before this Court.

## II. It is Improper for the Government to Argue "Harmless Error" Outside of the Court of Appeals

In its initial oral argument to the Court on December 10, and in its Opposition filed December 12, the government defends its indictment by emphasizing that the Ninth Circuit undertook harmless error review in *Salazar-Lopez*:

> Even if the indictment in this case had not alleged any removal dates, failure to do so would be harmless error. Unlike in *Salazar-Lopez*, all of the defendant's removals occurred after he was convicted of an aggravated felony. Therefore, if he is convicted, it will not matter which removal or combination of removals the jury finds because any of his removals can increase his statutory maximum penalty. Thus, given the dates of removal alleged in the indictment, if the jury convicts, there will be no doubt that it found that the defendant was removed after an aggravated felony conviction.

*Gov't Opp.* at 6:3-9.

There are two objections to the government's reliance on harmless error in its Opposition; the first pragmatic and legal, the second, ethical.

First, as a pragmatic and legal matter, the government misapprehends the harmless error analysis in *Salazar-Lopez*. As discussed above, the core holding of *Salazar-Lopez* was that the enhancement fact of the temporal relationship between a prior conviction and removal must be alleged in an indictment to trigger the greater statutory maximum sentences of Section 1326. *Salazar-Lopez*, 506 F.3d at 749-50. The Ninth Circuit held that it was error not to allege this enhancement fact in the indictment. *Id.*

The next issue for the Court in *Salazar-Lopez* was how to approach this error: using the harmless error analysis, or as structural error that mandated reversal and remand for resentencing. *See id.* at 750 ("Second, we consider whether such error, in a context that affects only sentencing, is subject to harmless error analysis.")

The Court in *Salazar-Lopez* examined two previous Ninth Circuit decisions that had addressed deficiencies in the indictment: *United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999), and *United States v. Jordan*, 291 F.3d 1091, 1095 (9th Cir. 2002). *See Salazar-Lopez*, 506 F.3d at 752-53. The *Du Bo* decision had found that indictment error

was structural error (requiring reversal). *Id.* at 752. "[I]f properly challenged prior to trial, an indictment's complete failure to recite an essential element of the charged offense not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment." *Id.* (*quoting Du Bo*, 186 F.3d at 1179)

The *Jordan* decision, by contrast, applied a harmless error analysis where the defendant had not objected before trial, but had only objected to the pre-sentence report on the basis of error in the indictment. *See id.* at 753 (*discussing Jordan*, 291 F.3d at 1094-95).

In *Salazar-Lopez*, the Court held that the procedural posture of the case was more akin to that in the *Jordan* decision than to *Du Bo*:

> We conclude that *Jordan* controls, and thus that harmless error analysis does apply. First and foremost, the procedural history of this case, the nature of Salazar-Lopez's challenge, and the nature of the relief he requests mirror *Jordan* much more closely than *Du Bo*. Like *Jordan*, Salazar-Lopez raised his *Apprendi* claim post-trial in his objections to the pre-sentence report, *see Jordan*, 291 F.3d at 1094-95, whereas in *Du Bo* the defendant objected to the indictment "[m]ore than two months before trial," *see Du Bo*, 186 F.3d at 1179.

*Salazar-Lopez*, 506 F.3d at 753.

Whatever the outcome of Mr. Herrera-Santos's prosecution, his early and repeated objections will make the present case far more analogous to *Du Bo* than to *Jordan*. Weeks before making an *initial appearance in the district court*, the defendant has specifically, emphatically, and repeatedly objected to the error in the indictment. If the government insists on proceeding on this indictment (and these purported statutory maximum sentences) in the district court, Mr. Herrera-Santos will be moving for disclosure of grand jury transcripts under Federal Rule of Criminal Procedure 6,[1] and for dismissal of the

---

[1] Federal Rule of Criminal Procedure 6 permits disclosure of grand jury transcripts:

(E) The court may authorize disclosure – at a time, in a manner, and subject to any other conditions that it directs – of a grand-jury matter:

*Herrera-Santos*, CR 07-0764 SI
DEF. REPLY RE: MOT.
PROPER ARRAIGNMENT                5

1 indictment under *Du Bo*. Put plainly, by the time this case reaches the Ninth Circuit the
2 record will fairly bristle with objections to this indictment. Because Mr. Herrera-Santos's
3 objections are being made before trial (as was done in *Du Bo*), any appellate review will
4 employ the structural error approach, requiring reversal. The government's reassurance
5 that the course it urges will only be reviewed under the "harmless error" analysis is thus
6 unrealistically optimistic, and does not reflect Mr. Herrera-Santos's demonstrated resolve
7 to object to this indictment.

8      The second objection to the government's "harmless error" argument relates to the
9 propriety of this argument before the case is in the Court of Appeals.

10      The harmless error analysis used by the Ninth Circuit in *Salazar-Lopez* has no
11 relevance to the pre-trial challenge raised by Mr. Herrera-Santos in the magistrate court.
12 The only possible significance of the harmless error argument is to encourage this Court
13 to knowingly commit error, with the implicit reassurance that a conviction will withstand
14 appellate scrutiny.

15      It is improper for a representative of the federal government to urge a Court to
16 deliberately adopt known error, regardless of whether that error will or will not withstand
17 appellate scrutiny. *See* ABA Model Rules of Professional Conduct (Model Rules) Rule
18 3.8. cmt. [1] ("A prosecutor has the responsibility of a minister of justice and not simply
19 that of an advocate. This responsibility carries with it specific obligations to see that the
20 defendant is accorded procedural justice and that guilt is decided upon the basis of

---

23           (i) preliminarily to or in connection with a judicial proceeding;
24           (ii) at the request of a defendant who shows that a ground may exist to
25           dismiss the indictment because of a matter that occurred before the grand
          jury;

27 FED. R. CRIM. P. 6(e)(3)(E)(ii) (West 2007). In the present case, Mr. Herrera-Santos will
28 show grounds to believe that the grand jury was never presented with the fact that any of
the alleged removals followed a conviction for an enumerated offense.

sufficient evidence."); http://www.abanet.org/cpr/mrpc/rule_3_8_comm.html, visited Dec. 14, 2007. The government's argument, "Even if the indictment in this case had not alleged any removal dates, failure to do so would be harmless error," is entirely appropriate in a Ninth Circuit appellate brief, after the trial is complete and all defense objections have been made (or waived). *See Gov't Opp.* at 6:3. The only possible relevance of this argument in *this* Court, however, is to urge the Court to deliberately tolerate legal error with the suggestion that a conviction is unlikely to be overturned because of a deferential standard of review. That is an inappropriate argument for the federal government and, of course, would be an improper basis for this Court's decision. It goes without stating that a magistrate or district court cannot deliberately permit legal error by hedging that the approach will survive harmless error review – and it certainly goes without stating that this Court would never do so. The defense accordingly objects to the government's argument that deficiencies in the indictment are simply harmless error and should therefore be tolerated by this Court.

### III.  A Magistrate Court that Advises Defendants of the Maximum Statutory Penalty Must Do So Correctly

The government's first, and most curious, argument is that "[t]he government and the Court are not required to inform the defendant of the maximum penalties he faces at his arraignment . . . Because the government and the Court do not have to inform the defendant of the maximum penalties that he faces, he cannot seek relief if an indictment alleges that he is subject to a higher penalty than he believes he faces." *Gov't Opp.* at 4-5.

The government is correct that the text of Federal Rule of Criminal Procedure 10 does not require a defendant to be advised of the maximum penalties that he faces. *See* FED. R. CRIM. P. 10. This Court, however, routinely informs every defendant arraigned of the statutory maximum penalties of the charges in the indictment – as has every magistrate in this district for at least the last twenty years.

Why do the magistrate judges advise defendants of the maximum penalties at arraignment? One very important systemic reason is that it protects the government

*Herrera-Santos*, CR 07-0764 SI
DEF.  REPLY RE: MOT.
PROPER ARRAIGNMENT                   7

against later attacks on convictions, on allegations that the defendant was unaware of the statutory maximum penalties. *See, e.g., United States v. Gray*, 611 F.2d 194, 201 (7th Cir. 1979) (rejecting attack on sufficiency of advisement at guilty plea because defendant had been properly advised of statutory maximum penalty at arraignment).

The government's current position – that Mr. Herrera-Santos is not entitled to be advised of the correct statutory maximum penalties because he is not entitled to be advised of the maximum penalties at all – presents a number of options for this Court, and for all magistrates in this district:

**Option One – Stop advising all defendants of their statutory maximum penalties:** To avoid the danger of advising Mr. Herrera-Santos of the *incorrect* statutory maximum penalty, the magistrates may decide to stop advising defendants of the maximum penalties altogether. Habeas counsel would certainly welcome that approach; it would mean one less fact in the record proving that a defendant's plea was knowing and voluntary. It is unclear in the government's Opposition, however, if the United States Attorney's Office is now asking that *no* defendant be advised of the statutory maximum penalties in the Northern District of California;

**Option Two – Stop advising *illegal reentry* defendants of their statutory maximum penalties**: Another way to avoid deciding what the correct statutory maximum penalties are for these flawed illegal reentry indictments would be for the magistrate courts to not advise *illegal reentry* defendants of the penalties at arraignment. This policy would, however, raise serious Equal Protection concerns. If United States citizens are fully and fairly informed of their charges and the statutory maximum penalties,[2] indigent, (primarily) Mexican, illegal-reentry defendants should receive the same advisements;

**Option Three – Advise illegal reentry defendants *incorrect* statutory maximum penalty**: The final course is the least attractive, but seems to be what the

---

[2] *See, e.g.,* Duff Wilson, *Bonds Pleads Not Guilty to Federal Charges*, NEW YORK TIMES, Dec. 8, 2007, at http://www.nytimes.com/2007/12/08/sports/baseball/08bonds.html?ref=baseball (visited Dec. 14, 2007).

*Herrera-Santos*, CR 07-0764 SI
DEF. REPLY RE: MOT.
PROPER ARRAIGNMENT                 8

government urges in its Opposition. This Court – and all magistrate judges in the district – could inform illegal reentry defendants of the incorrect statutory maximum penalties. Defense objections could be rejected with the assurance that a defendant is not entitled to be informed of the maximum penalties anyway, and is therefore not entitled to be informed of the *correct* penalties.

As a simple matter of professionalism, it is hard to image than any judge in this district would feel comfortable with this approach. Once a decision is made to advise defendants of the statutory maximum penalties, the magistrate courts (aided by both government and defense counsel) have a legal and ethical obligation to inform defendants of the *correct* penalties.

To articulate the three options arising from the government's position on advisement at arraignment is to reveal the fallacy of the argument. If the government insists on standing by the current flawed indictment, this Court should inform Mr. Herrera-Santos of the correct statutory maximum penalties. The correct statutory maximum penalty for the offense charged in this indictment is two years in custody, and one year of supervised release. *See* 18 USC § 3559(a)(5), 18 USC § 3583(b)(3). The defense would respectfully request that Mr. Herrera-Santos be re-arraigned and informed of the correct statutory maximum penalties.

**IV.   The Northern District of California United States Attorney's Office is the Only USAO in California that Does Not Indict in Conformance with *Salazar-Lopez***

The United States Attorney's Office for the Northern District of California is the only USAO that does not indict illegal reentry cases in conformance with *Salazar-Lopez*. After *Salazar-Lopez*, United States Attorney's offices in other California districts are routinely alleging the date of a prior conviction, and the dates of subsequent removals, in illegal reentry cases. *See, e.g., Exhibit A*, *United States v. Mirno Pliego-Sanchez*, CR 07-01248 (C.D. Cal. Nov. 9, 2007) (alleging that at least one of the defendant's alleged deportations and removals occurred subsequent to defendant's conviction for specifically-identified aggravated felony convictions); *Exhibit B*, *United States v. Jose Luis*

*Herrera-Santos*, CR 07-0764 SI
DEF. REPLY RE: MOT.
PROPER ARRAIGNMENT                                     9

1  *Hernandez-Rodriguez*, CR 07-0535 EIG  (E.D. Cal. Nov. 29, 2007) (alleging that alien
2  had been removed after being convicted for specifically enumerated felony conviction).
3        The United States Attorney's Office in the Southern District of California does not
4  specify the type or nature of conviction, but does allege that the removal followed a date
5  that corresponds to that conviction. *See Exhibit C*, *United States v. Sergio Santos*, CR 07-
6  3216 IEG (S.D. Cal. Nov. 23, 2007) (alleging that removal subsequent to December 15,
7  2003). Without conceding that type of indictment is sufficient to satisfy *Salazar-Lopez*
8  (an issue contested by the Federal Defender of San Diego), it is notable that even the San
9  Diego indictments contain more information than the deficient indictments in the
10 Northern District of California.
11       The fact that United States Attorney's in three (much-larger) districts in California
12 routinely indict illegal reentry cases in compliance with *Salazar-Lopez* demonstrates that
13 complying with the new Ninth Circuit decision imposes no particular burden. Why the
14 Northern District of California United States Attorney's Office has decided to stand alone
15 against the dictates of *Salazar-Lopez* is unclear. What is clear, however, is that having
16 made that choice the government must be satisfied with the penalties that the *Herrera-*
17 *Santos* indictment carries: two years of custody, and one year of supervised release.
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

**Conclusion**

This Court may fairly ask why it has been placed in the middle of this imbroglio, when it would presumably be a simple matter for the government to return to the grand jury and obtain a superceding indictment that conforms with *Salazar-Lopez* (as is routinely done in every illegal reentry case in every other federal district in California). If the present case proceeds to the district court with this indictment – and the twenty-year statutory maximum penalties the indictment purportedly carries – the Honorable Susan Illston will undoubtably ask the same question.

Whatever its reasons, this United States Attorney's office has elected to embrace and defend the current flawed indictment. This Court should accordingly re-arraign Mr. Herrera-Santos and advise him of the correct statutory maximum penalties: two years in custody, and one year of supervised release.


Dated: December 14, 2007

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

/s

STEVEN G. KALAR
Assistant Federal Public Defender

*Herrera-Santos*, CR 07-0764 SI
DEF. REPLY RE: MOT.
PROPER ARRAIGNMENT                    12