BARRY J. PORTMAN
Federal Public Defender
STEVEN G. KALAR
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant Herrera-Santos

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-0764 SI |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S MOTION TO |
| | ) | DISMISS THE INDICTMENT |
| v. | ) | |
| | ) | **Hearing Date**: Friday, April |
| JUAN HERRERA-SANTOS, | ) | 18, 2008 at 11:00 am. |
| | ) | |
| Defendant. | ) | |
| | ) | |

# Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    The Grand Jury Returns an Indictment That Does Not Allege a Temporal
      Relationship Between Removal and a Prior Qualifying Conviction . . . . . . . . . . 3

II.   Mr. Herrera-Santos Was Not Informed of the Maximum Statutory Penalties by the
      Magistrate Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.    In *Salazar-Lopez*, the Ninth Circuit Required That a Specific Temporal
      Relationship Be Charged as an *Apprendi* Enhancement Fact . . . . . . . . . . . . . . . . 6

II.   Federal Authority After *Salazar-Lopez* is Split on Whether the Section 1326
      Indictment Requirements are Conjunctive, or Disjunctive . . . . . . . . . . . . . . . . . . 7

III.  The Sixth Amendment, as Interpreted by *Apprendi*, Requires the Allegation of the
      Temporal Relationship Between Conviction and Removal to Trigger the Greater
      Statutory Maximum Sentences of Section 1326 . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.   Appellate Standards of Review Have No Relevance in this Proceeding . . . . . . . 15

V.    Mr. Herrera-Santos Requests a Referral to a Settlement Conference . . . . . . . . . 17

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1
2

# Table of Authorities

## Federal Cases

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998) . . . . . . . . . . . . . . . . . . . . . . . 11

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) . . . . . 7

*United States v. Calderon-Segura*, 512 F.3d 1104 (9th Cir. 2008) . . . . . . . . . . . . . 7, 8, 9

*United States v. Cotton*, 535 U.S. 625 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Gonzalez-Medina*, 976 F.2d 570 (9th Cir. 1992) . . . . . . . . . . . . . . . . . 11

*United States v. Jordan*, 291 F.3d 1091 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Pacheco-Zepeda*, 234 F.3d 411 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . 11

*United States v. Ramos-Tadeo*, 2008 WL. 444557 (E.D. Wash. Feb. 15, 2008) . . . . . . . . 9

*United States v. Salazar-Lopez*, 506 F.3d 748 (9th Cir. 2007) . . . . . . . . . . . . . . . . *passim*

*United States v. Salinas-Ruiz*, 2008 WL. 506054 (E.D. Wash. Feb. 20, 2008) . . . . . . . . . 9

## Federal Statutes

8 U.S.C. § 1326(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 3559(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 3583(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

BARRY J. PORTMAN
Federal Public Defender
STEVEN G. KALAR
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant Herrera-Santos

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-0764 SI |
| Plaintiff, | ) | |
| v. | ) | DEFENDANT'S MOTION TO DISMISS THE INDICTMENT |
| JUAN HERRERA-SANTOS, | ) | **Hearing Date**: Friday, April 18, 2008 at 11:00 am. |
| Defendant. | ) | |

TO: UNITED STATES ATTORNEY, PLAINTIFF; AND JOSEPH P. RUSSONIELLO, UNITED STATES ATTORNEY, NORTHERN DISTRICT OF CALIFORNIA; AND TAREK HELOU, ASSISTANT UNITED STATES ATTORNEY

PLEASE TAKE NOTE that on Friday, April 18, 2008 at 11:00 Mr. Herrera-Santos will move this Court to dismiss the indictment in the above-entitled case, or to return Mr. Herrera-Santos to the magistrate for re-arraignment on the current indictment. This motion is based on the Constitution of the United States, all relevant case law and statutory authority, the following memorandum of points and authorities, and such argument as the Court will entertain at the motion hearing.

//
//
//
//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Introduction**

In *United States v. Salazar-Lopez*, 506 F.3d 748 (9th Cir. 2007), the Ninth Circuit held that *Apprendi* requires that "the dates of a previous felony conviction and of a previous removal from the United States, subsequent to that conviction, must be alleged in the indictment and proved to a jury for the defendant to be subject to an increased sentence under 8 U.S.C. § 1326(b)." *Id.* at 749-50. Every United States Attorney's Office in California – with the exception of the Northern District – complies with *Salazar-Lopez*. Every United States Attorney's office – with the exception of the Northern District – alleges in Section 1326 indictments both the date of removal, and that this removal followed a date of conviction that triggers the greater statutory maximum sentences of Section 1326(b).

The Northern District United States Attorney's Office now complies with one-half of the *Salazar-Lopez* equation. It alleges a date (or dates) of removal, but does not allege the enhancement fact of a prior qualifying conviction, the date of the prior conviction, or the temporal relationship between a qualifying conviction and a removal. Because the Northern District United States Attorney's Office inexplicably parts from its fellow offices and insists on this policy, the case now before the Court presents a novel issue of Sixth Amendment law:

> Must an indictment that seeks a statutory maximum sentence in excess of two years for the offense of illegal reentry allege the temporal relationship between a removal, and the date of a prior qualifying conviction?

Mr. Herrera-Santos maintains that the answer to that question is, "yes." In its previous briefing and argument in magistrate court, the government made it clear that it intended to allege in the indictment an offense that carries a statutory maximum sentence in excess of two years. In light of the government's position, the current indictment is deficient and should be dismissed. In the alternative, Mr. Herrera-Santos should be sent back to the magistrate court with instructions that he be arraigned on an offense that carries a two-year statutory maximum sentence, under Section 1326(**a**) of Title 8.

1

**Background**

2

**I.    The Grand Jury Returns an Indictment That Does Not Allege a Temporal
Relationship Between Removal and a Prior Qualifying Conviction**

3

4        On December 4, 2007, a federal grand jury returned a one-count indictment against

5    Mr. Herrera-Santos. *See Exhibit A, United States v. Juan Herrera-Santos*, CR 07-0764 SI,

6    Indictment (hereinafter, "Indictment.") The Indictment alleges a violation of Section 1326

7    of Title Eight of the United States Code. Specifically, the Indictment alleges that the

8    defendant was "excluded, deported, and removed from the United States" on or about

9    eight specific dates. *Id.* (alleging removals on October 3, 2001, September 7, 2002, April

10    9, 2003, April 22, 2005, July 1, 2005, November 30, 2005, November 28, 2006, and

11    February 22, 2007). The indictment further alleges that on or about September 17, 2007,

12    Mr. Herrera-Santos was found in the Northern District of California without having first

13    received the consent to reenter by the Attorney General and Secretary of Homeland

14    Security. *Id.*

15        The indictment does not allege that Mr. Herrera-Santos previously suffered a

16    conviction for three or more misdemeanors involving drugs or crimes against a person, or

17    both. *See id.*; *see also Exhibit B*, 8 USC § 1326(b)(1). The indictment does not allege that

18    the defendant suffered a conviction for felony. *Id.* The indictment fails to allege that Mr.

19    Herrera-Santos suffered a conviction for an "aggravated felony." *Id.*; *Exhibit B*, Section

20    1326(b)(2). Because the indictment fails to allege that the defendant had previously

21    suffered any of the enumerated convictions in Section 1326, it necessarily also fails to

22    allege that Mr. Herrera-Santos was removed from the United States *after* having sustained

23    such an enumerated conviction. *Id.*; Section 1326(b).

24        The Indictment (shown as entry five on Mr. Herrera-Santos docket) bears a face

25    sheet titled, "Defendant Information Relative to a Criminal Action - in U.S. District

26    Court." *Exhibit A*. That face sheet reports the following penalties for this indictment:

27        PENALTY:

28        Maximum Prison Term of 20 Years;

        Maximum Fine $250,000

1    Maximum Term of Supervised Release of 3 Years;

2    Mandatory Special Assessment of $100.

3    *Id.*

## II.    Mr. Herrera-Santos Was Not Informed of the Maximum Statutory Penalties by the Magistrate Court

Mr. Herrera-Santos made his initial appearance on November 20, 2007, before the Honorable Magistrate Bernard Zimmerman. Undersigned counsel was appointed. On December 7, 2007, undersigned counsel filed an objection to an upcoming arraignment on the improper statutory maximum sentences set forth in the indictment's penalty sheet. The objection identified defects in the indictment, in light of the Ninth Circuit's recent decision in *Salazar-Lopez*. *Docket Entry 6.*

On December 10, 2007, the government asked the Honorable Maria-Elena James to arraign Mr. Herrera-Santos and inform him that the statutory maximum sentence was twenty years. Undersigned counsel renewed his objection. Judge James arraigned Mr. Herrera-Santos over defense objection, but then put the matter on for further briefing and a hearing.

The parties briefed the *Salazar-Lopez* issue. While the government maintained that the current indictment satisfied the strictures of *Salazar-Lopez*, it urged Judge James to avoid the issue altogether because "the government need not inform [the defendant] at his arraignment of the maximum penalties he faces." *Gov't Opp. to Def. Obj. to Arraign.* at 2:19-20.

The government prevailed. Or rather, the government prevailed in its argument that the magistrate should avoid the argument. On December 17th, Magistrate Judge James held that the Federal Criminal Rules of Procedure did not require that a defendant be informed of the maximum penalties at the time of arraignment. *Exhibit C, United States v. Juan Herrera-Santos*, CR 07-0764 SI (N.D. Cal. Dec. 17, 2007), *Ord.* at 1:26-28. Mr. Herrera-Santos was then effectively "un-arraigned" in the order: "the Court hereby STRIKES the portion of the Defendant's arraignment in which the government informed him of any maximum penalties." *Id.* at 2:1-2.

Mr. Herrera-Santos thus became the first defendant in undersigned counsel's career who appears before the district court without having been informed of the maximum penalties for the offense. Indeed, it is a fair wager this Court has never had another criminal defendant appear before it who had not previously been informed of the statutory maximum penalties by the magistrate.

Mr. Herrera-Santos soon shared this dubious distinction with another illegal reentry defendant. On February 25, 2008, Jorge Magana-Alvarado appeared before Judge James for arraignment. Like Mr. Herrera-Santos, Mr. Magana-Alvarado was charged in an indictment that did not allege the date of a prior qualifying conviction – a fact necessary to trigger the higher statutory maximum sentences of Section 1326(b). *See United States v. Magana-Alvarado*, CR 07-00379 SI, Indictment. (Coincidently, Mr. Magana-Alvarado has also been assigned to this Court).

Like Mr. Herrera-Santos, the government (and coincidentally, the same AUSA) argued before Magistrate Judge James that Mr. Magana-Alvarado faced a twenty-year statutory maximum sentence.[1] Like Mr. Herrera-Santos, Judge James declined to advise Mr. Magana-Alvarado of his statutory maximum sentence. Like Mr. Herrera-Santos, Mr. Magana-Alvarado is a Section 1326 defendant now before this Court who has not been advised by a magistrate of his statutory maximum sentence.

In sum, because of the aberrant charging policy of the Northern District United States Attorney's Office, the arraignment of Section 1326 defendants promises to be a recurring problem for illegal reentry cases.

//
//
//
//
//

---

[1] Interestingly, the government later conceded that this penalty advisement was in error. Mr. Magana-Alvarado does not, in fact, face a twenty-year statutory maximum sentence.

1

2                                    **Discussion**

3        Because the indictment returned by the grand jury in this case omits enhancement

4  facts necessary to trigger the greater statutory maximum sentences of Section 1326(b), it

5  is fatally defective and should be dismissed.

6  **I.    In *Salazar-Lopez*, the Ninth Circuit Required That a Specific Temporal
         Relationship Be Charged as an *Apprendi* Enhancement Fact**
7

8        This motion to dismiss the indictment, and the Court's ultimate resolution of this

9  issue, will hinge on a narrow legal question: was the Ninth Circuit's requirement in

10  *Salazar-Lopez* conjunctive, or disjunctive? Phrased differently, does *Salazar-Lopez*

11  require that a Section 1326 indictment allege *both* the date of a prior removal *and* the fact

12  that this removal took place after a qualifying conviction, or is the allegation of the date

13  of removal alone sufficient? The defense argues the former position, the government, the

14  latter. Clearly, the starting point for this inquiry is the *Salazar-Lopez* decision itself.

15        In *United States v. Salazar-Lopez*, Judge Clifton wrote for the Ninth Circuit as it

16  considered an appeal from a conviction and sentence in an illegal reentry case. 506 F.3d

17  at 749. Only the sentence was at issue in the published opinion. *Id.* at 750 & n. 1.

18        Mr. Salazar-Lopez was caught by the Border Patrol near the Mexican border, and

19  was charged with one count of being a previously removed alien "found in" the United

20  States. *Id.* "The indictment did not allege that Salazar-Lopez had been previously

21  removed subsequent to a felony conviction, nor did it allege a specific date for Salazar-

22  Lopez's prior removal." *Id.*

23        Trial on this charge resulted in a conviction. *Id.* The presentence report

24  recommended that the Salazar-Lopez be sentenced under Section 1326(**b**) of Title 8,

25  because his "2005 removal was subsequent to a 2003 felony conviction." *Id.* The defense

26  objected at sentencing, arguing that the "facts necessary to sustain § 1326(b)(1)'s

27  sentencing enhancement had not been charged in the indictment and proved beyond a

28  reasonable doubt to a jury." *Id.* The district court rejected these arguments. On appeal,

Salazar-Lopez renewed his contention that "his exposure to § 1326(b)'s higher statutory

maximum violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2nd 435 (2000), because neither the date of his prior removal nor the temporal relationship between the removal and his prior conviction was alleged in the indictment and proved to a jury." *Id.* at 751.

The Ninth Circuit "that an *Apprendi* error occurred here." *Id.*

As mentioned at the outset of this discussion, the parties now before this Court dispute the core holding of *Salazar-Lopez*. Again, the defense maintains that the temporal relationship between a removal and a prior conviction must be alleged in an indictment to trigger the higher statutory maximum sentences of Section 1326(b). The government, by contrast, argues that an indictment that alleges the date of a removal, alone, is sufficient to trigger the greater statutory penalties. Given this dispute, it is useful to present the exact issue in *Salazar-Lopez* as it was framed by the Ninth Circuit itself:

> [F]or a defendant convicted of being a previously removed alien found in the United States, in violation of 8 USC § 1326, we must resolve whether the dates of a previous felony conviction ***and of*** a previous removal from the United States, subsequent to that conviction, must be alleged in the indictment and proved to a jury for the defendant to be subject to an increased sentence under 8 U.S.C. § 1326(b).

*Id.* at 749-50 (emphases added).

The Court's holding was succinct, and clear: "We answer that question in the affirmative." *Id.* at 750.

A plain reading of the issue presented, and the holding, *of Salazar-Lopez* reveals that the decision requires the two enhancement facts in the conjunctive: *both* the date of the prior conviction *and* the date of a subsequent removal must be alleged.

## II.    Federal Authority After *Salazar-Lopez* is Split on Whether the Section 1326 Indictment Requirements are Conjunctive, or Disjunctive

The Ninth Circuit found *Apprendi* indictment error in *Salazar-Lopez*. The Ninth found *Apprendi* indictment error again in a more-recent Ninth Circuit decision, *United States v. Calderon-Segura*, 512 F.3d 1104 (9th Cir. 2008). In *Calderon-Segura* (as in *Salazar-Lopez*) the illegal reentry defendant was arrested on the border and was convicted

1   at trial. *Id.* at 1106. In *Calderon-Segura* (as in *Salazar-Lopez*) the defense objected to the

2   use of an aggravated felony at sentencing to increase the statutory maximum sentence

3   above the two-year maximum in Section 1326(a). *Id.* at 1106. In *Calderon-Segura* (as in

4   *Salazar-Lopez*) the indictment "did not allege . .  either the date of his prior removal or

5   the temporal relationship between the prior removal and his prior aggravated felony

6   conviction." *Id.* at 1111.

7        The core holding in *Calderon-Segura* was as clear as that in *Salazar-Lopez*: "To

8   begin, it is now clear that there was indictment error in this case." *Id.*

9        The Court in *Calderon-Segura* then went on, however, to inaccurately characterize

10  the *Salazar-Lopez* decision and to describe the *Apprendi* enhancement fact requirements

11  as being in the *dis*junctive. *Calderon-Segura* refers to a brief discussion at the end of the

12  *Salazar-Lopez* analysis (placed next to the *Salazar-Lopez* original language, below):

13
14  Under *Salazar-Lopez*, in order for a            Here, the temporal relationship between
    defendant to be eligible for an enhanced         Salazar-Lopez's removal and his previous
15  statutory maximum under § 1326(b), the           conviction was a fact that increased the
16  indictment must allege, in addition to the       maximum sentence that he faced. As such,
    facts of prior removal and subsequent            the date of the removal, or at least the fact
17  reentry, either the date of the prior            that Salazar-Lopez had been removed
    removal or that it occurred *after* a            after his conviction, should have been
18  qualifying prior conviction.                     alleged in the indictment and proved to the
                                                     jury. The failure to do so was an Apprendi
19                                                   error.
20  *Calderon-Segura,* 512 F.3d at 1111,
    citing *Salazar-Lopez*, 506 F.3d at 752.        *Salazar-Lopez*, 506 F.3d 748 at 752.
21

22       *Calderon-Segura* ignores, however, the very first paragraph of the *Salazar-Lopez*

23  decision; the paragraph wherein the Court specifically articulates the central issue and

24  holding of the *Salazar-Lopez* case:

25       [W]e must resolve whether the dates of a previous felony conviction **and of** a
         previous removal from the United States, subsequent to that conviction, must be
26       alleged in the indictment and proved to a jury for the defendant to be subject to an
         increased sentence under 8 U.S.C. § 1326(b). We answer that question in the
27       affirmative.
28
    *Salazar-Lopez*, 506 F.3d at 749-50 (emphases added). Moreover, the Ninth Circuit's

1   casual use of the disjunctive in *Calderon-Segura* is dicta, for *neither* the date of a prior

2   conviction or the date of a removal were alleged in the indictment in that case. *Calderon-*

3   *Segura*, 512 F.3d at 1111.

4        The conflicting language of *Calderon-Segura* and *Salazar-Lopez* has produced

5   conflicting district court decisions on the issue. In *United States v. Salinas-Ruiz,* 2008 WL

6   506054 (E.D. Wash. Feb. 20, 2008), *Ord.*, the Honorable Edward Shea rejected a pretrial

7   motion to dismiss the indictment. *See Exhibit D, Order*. In that decision, the district court

8   concluded that *Salazar-Lopez* "does not require an indictment to list both the date of

9   removal *and* the fact that defendant was removed after a conviction; rather, an indictment

10  is sufficient if it includes the date of removal *or* the fact that Defendant was removed after

11  a § 1326(b) listed conviction." *Salinas-Ruiz*, 2008 WL 506054, *2 (emphases in original).

12  Judge Shea does not, however, undertake an *Apprendi* analysis as to why either of those

13  facts, standing alone, satisfy the Sixth Amendment requirement to trigger the higher

14  statutory maximum sentence.

15       In *United States v. Ramos-Tadeo*, 2008 WL 444557 (E.D. Wash. Feb. 15, 2008),

16  *Ord.*, by contrast, the Honorable Fred Van Sickle concluded that the government's failure

17  to allege the temporal relation between a defendant's prior deportation and a prior felony

18  conviction precluded a sentence above two years for an illegal reentry conviction. *Exhibit*

19  *E, Order*. The district court found the statutory maximum sentence to be twenty-four

20  months *despite* the fact "that the date of the Defendant's prior deportation was alleged in

21  the indictment."[2] *Ramos-Tadeo*, 2008 WL 444557, *1. As Judge Van Sickle observed,

22  although the date of the removal was alleged "the indictment does not allege the date of

23  the Defendant's prior felony conviction. Nor does it allege that the Defendant was

24  previously deported after being convicted of a qualifying felony." *Id.*  The Court was

25  accordingly bound "to impose a period of incarceration no greater than 24 months." *Id.*

26       As explained in greater detail below, Judge Van Sickle has the better argument

27

28       [2] Notably, the structure of this Yakima indictment is identical to those now brought
    in the Northern District of California. *See Exhibit F, United States v. Ricardo Ramos-*
    *Tadeo*, CR 07-6042 FVS, Indictment.

1    (and apparently three other California United States Attorney's Offices believe so as

2    well). The heart of the *Apprendi* issue in Section 1326 indictments is the temporal

3    relationship between a qualifying conviction and a deportation. If both dates of that

4    temporal relationship are not alleged, the indictment instead charges a two-year statutory

5    maximum sentence under Section 1326(a).

6    **III.    The Sixth Amendment, as Interpreted by *Apprendi*, Requires the Allegation of
         the Temporal Relationship Between Conviction and Removal to Trigger the
7         Greater Statutory Maximum Sentences of Section 1326**

8
9    The current indictment *correctly* charges the crime of illegal reentry, in violation

10   of 8 USC § 1326**(a)**. The statutory maximum sentence for a violation of Section 1326(a)

11   is two years. *See Exhibit B,* Section 1326(a). Because a violation of Section 1326(a)

12   carries a maximum sentence of two years, the maximum term of supervised release for a

13   violation of Section 1326(a) is one year. *See* 18 USC § 3559(a)(5) (defining Class E

14   felony); *see also* 18 USC § 3583(b)(3) (defining the statutory maximum term of

15   supervised release for a Class E felony as one year).

16   The problem with the *Herrera-Santos* indictment, however, is that the government

17   does not intend to charge a two-year crime (and has avowed to seek a sentence in excess

18   of two years if the defendant is convicted). The face sheet of the indictment claims that

19   the charged offense carries penalties of up to twenty years in custody, a maximum fine of

20   $250,000, and a three year term of supervised release. *See Exhibit A*. The penalty sheet

21   reflects the government's position in its earlier briefing and in its argument before

22   Magistrate Judge James: it intends to seek a sentence in excess of two years, based on the

23   present indictment. Therein lies the rub: because it is missing a key enhancement fact, the

24   present indictment does not entitle the government to seek the greater statutory maximum

25   sentences associated with Section 1326(b).

26   As this Court well knows,[3] Section 1326 has been subject to years of litigation. For

27
28       [3] This Court had the distinction of ruling on one of the first *Apprendi* motions in
     the United States, in *United States v. Angel Rios-Ibarra*, CR 00-0506 SI (N.D. Cal. 2000).
     The Court will recall that Mr. Rios-Ibarra alleged that an illegal reentry indictment was

well over a decade the Ninth Circuit and Supreme Court have wavered on whether allegations and proof of prior convictions are required to trigger the higher statutory maximum sentences found in Section 1326(b). *See, e.g., United States v. Gonzalez-Medina,* 976 F.2d 570, 572 (9th Cir. 1992) ("Because sections 1326(a) and 1326(b)(1) (and, *a fortiori,* 1326(b)(2))) constitute separate crimes – and not merely a single offense with different sentencing criteria – the government was obligated to put on evidence of the defendants' prior felony convictions . . . ."), *abrogated by Almendarez-Torres v. United States*, 523 U.S. 224, 226-27 (1998) ("We conclude that the subsection is a penalty provision, which simply authorizes a court to increase the sentence for a recidivist. It does not define a separate crime. Consequently, neither the statute nor the Constitution requires the Government to charge the factor that it mentions, an earlier conviction, in the indictment.")

This debate has continued into the post-*Apprendi* era. *See, e.g., United States v. Pacheco-Zepeda*, 234 F.3d 411, 415 (9th Cir. 2000) ("Under *Almendarez-Torres*, the government was not required to include Pacheco-Zepeda's prior aggravated felony convictions in the indictment, submit them to a jury, or prove them beyond a reasonable doubt, and the district court properly considered such convictions in sentencing.")

*Salazar-Lopez* is a new chapter in Section 1326 jurisprudence. A close reading of *Salazar-Lopez* and the rationale for its *Apprendi* decision reveals that the temporal relationship of prior conviction and subsequent removal must be alleged in an indictment to trigger the greater statutory maximum sentences of Section 1326(b).

To discern the exact facts that must be alleged in a Section 1326(**b**) indictment, it is helpful to deconstruct the Section 1326 statute and the *Salazar-Lopez* decision. First, it is undisputed that under current Ninth Circuit and Supreme Court law the details of a prior conviction need not be alleged in an indictment to trigger increased statutory maximum sentences. *See, e.g., United States v. Cotton*, 535 U.S. 625, 627 (2002). It is

---

defective in light of *Apprendi*, and moved for dismissal in a Rule 29 motion during a stipulated facts trial.

equally undisputed that *Apprendi* requires that a fact – other than a conviction – that increases the prescribed maximum penalty must be charged in the indictment. *Id.; see also Salazar-Lopez*, 506 F.3d at 752 (citing *Cotton*). Finally, the parties will agree that *Salazar-Lopez* held that *Apprendi* and the Sixth Amendment require that *some* fact beyond alienage, removal and reentry must be alleged to trigger the greater sentences found in Section 1326(b).

What additional facts does *Salazar-Lopez* require?

Under Section 1326(b), it is *not* the fact of a conviction that increases a statutory maximum sentence from two years, to ten or twenty years. It is possible to have three misdemeanor convictions for drugs or crimes against the person, or a felony, *and* to have been removed, *without* triggering the ten year statutory maximum sentence of (b)(1).[4] *See* 8 USC § 1326(b)(1). Similarly, it is possible to have a been convicted of an aggravated felony, and to have been removed, *without* triggering the twenty year statutory maximum sentence of (b)(2).[5] *See id.* at § 1326(b)(2). The enhancement fact that triggers the greater statutory maximum sentence in Section 1326(b) is not the fact of the conviction, or the fact of the removal: it is the *temporal relationship between the two events*. An alien must have suffered a removal "*subsequent to a conviction* for commission of an aggravated felony" to be "imprisoned not more than 20 years." *Id.* (emphasis added).

How can the government allege this enhancement fact, this key temporal relationship, in an indictment? One way to do so is to allege the date of a removal, and to allege that the removal took place after a specific and enumerated conviction on a particular date. That is, in fact, how the largest United States Attorney's Office in California charges illegal reentry cases. *See Exhibit G*, *United States v. Mirno Pliego-Sanchez*, CR 07-01248 (C.D. Cal. June 2007), Indictment (alleging dates of removals and

---

[4] If an alien was removed, reentered, and *then* sustained these convictions, he or she would not face the greater statutory maximum sentence of Section 1326(b)(1).

[5] If an alien was removed, reentered, and *then* sustained a conviction for an aggravated felony, he or she would not face the greater statutory maximum sentence found in Section 1326(b)(2).

1    specific and enumerated prior aggravated felonies).

2         Moreover, this approach is precisely how the United States Attorney's Office in

3    the adjoining Eastern District of California charges illegal reentry cases. *See Exhibit H,*

4    *United States v. Jose Luis Hernandez-Rodriguez*, CR 07-0535 EIG (E.D. Cal. Nov. 27,

5    2007), Indictment (alleging date of removal and specific and enumerated prior aggravated

6    felonies).

7         An alternative, and less acceptable method, is to allege the date of the removal and

8    the date of the prior conviction – without enumerating the particular conviction. *See*

9    *Exhibit I, United States v. Sergio Santos*, CR 07-3216 IEG (S.D. Cal. Nov. 23, 2007),

10   Indictment (alleging date of removal and alleging that this removal came after date of a

11   prior qualifying conviction (December 15, 2003)). This sparse Southern District

12   indictment may have problems of its own. Even these limited San Diego indictments,

13   however, go much further than the deficient indictments returned by grand juries in the

14   Northern District of California, because they allege the "temporal relationship between

15   [the alien's] removal and his previous conviction." *Salazar-Lopez*, 506 F.3d at 752.

16        The Northern District's Section 1326 indictments fail to allege the key

17   enhancement fact of the temporal relation between removal and conviction, because these

18   indictments allege only *one* date in the pair of critical events: the removal. With only one

19   of the pair of critical dates alleged, Northern District indictments are as effective as a one-

20   bladed pair of scissors.

21        The government has argued before Judge James, and will argue in this Court, that

22   it is a simple matter for the Court to make a finding that a removal was subsequent to a

23   qualifying conviction.[6] Simple, yes. Constitutionally permissible, no. The fact that a

24   removal was subsequent to the date of conviction for a qualifying offense must be alleged

25   in the indictment and admitted by the defendant or found by a jury. *See Cotton*, 535 U.S.

26

27        [6] In its Opposition brief filed with Judge James, the government asserted, "The
28   judge can determine whether the felony conviction or aggravated felony conviction
     occurred after the removal date found by the jury." *Gov't Opp. Def's Obj. Arraign.*, at
     5:27-28 - 6:1-2.

at 627 (*Apprendi* enhancement facts must be alleged in an indictment). The Sixth

Amendment (as interpreted by *Apprendi*) squarely precludes this Court from making a

sentencing finding of an enhancement fact – the date of a prior conviction and the

temporal relation to a removal – that increases the statutory maximum sentence in a

Section 1326 case.

Consider the government's argument from a different perspective. If *Apprendi*

permitted the Court to make a finding that a removal was subsequent to a qualifying

conviction, then the Court would equally be empowered to make a finding at sentencing

as to the date of a removal. That, explained the Ninth Circuit in *Sandoval-Lopez*, it cannot

do. Because the Court cannot constitutionally make sentencing findings of enhancement

facts relating to the *dates* of removals, it similarly cannot make findings of enhancement

facts relating to the date of convictions.

In reality, it would be a simple matter for the government to present evidence to

the grand jury that a removal was subsequent to a qualifying conviction and to craft

*Salazar-Lopez*-compliant indictments. Indictments routinely returned by grand juries in

the Central and Eastern Districts clearly and openly comply with *Salazar-Lopez*. These

compliant indictments immediately and definitively quell defense *Apprendi* challenges

now peppering Section 1326 cases throughout the Northern District. Moreover, from a

public policy perspective, indictments like those in the Central and Eastern Districts

provide the welcome certainty that the government has done its homework and identified

a case with qualifying prior convictions meriting federal prosecution, *before* the case goes

to the grand jury.[7]  It is a fair question for the Court to ask why, as a practical matter, the

---

[7] In the last several years, the district has had a number of cases "mistakenly"
indicted by the Northern District of California. In these cases, an Immigration Agent
erroneously identifies a prior felony conviction as an aggravated felony. The reviewing
AUSA does not carefully research the case before intake, and only when defense counsel
is appointed does it become clear that the alien is facing a guideline sentence well below
that described in the "prosecution memo," or outlined in the government's intake criteria.
*See, e.g., Exhibit J, United States v. Maximiliano Lopez-Perez*, CR 06-0241 MMC
(alleging a twenty-year statutory maximum case in penalty sheet when the defendant in
fact had no aggravated felony, and ultimately received a five-month sentence (reflected in

1    Northern District stands alone in its refusal to return *Salazar-Lopez*-compliant

2    indictments.

3    **IV.    Appellate Standards of Review Have No Relevance in this Proceeding**

4            In the previous litigation before the magistrate, the government argued that any

5    error in the *Herrera-Santos* indictment would be "harmless." Because the matter would

6    ultimately be reviewed for harmless error in the Ninth Circuit, the government posited,

7    the conviction will survive whether or not the indictment complies with *Salazar-Lopez*:

8            Even if the indictment in this case had not alleged any removal dates, failure to do
         so would be harmless error. Unlike in *Salazar-Lopez*, all the defendant's removals
9         occurred after he was convicted of an aggravated felony. Therefore, if he is
         convicted, it will not matter which removal or combination of removals the jury
10        finds because any of his removals can increase his statutory maximum penalty.
         Thus, given the dates of removal alleged in the indictment, if the jury convicts,
11        there will be no doubt that it found that the defendant was removed after an
         aggravated felony conviction.
12

13

14   *Gov't Opp. Def. Obj. Arraign.* at 6:3-9.

15           The defense strenuously objected to the appropriateness of the "harmless error"

16   argument before the magistrate, and renews its objection to the government pressing this

17   argument before this Court. It is, at best, improper for the government to urge a district

18   court to adopt a potentially erroneous course of action with the assurance that any mistake

19   will easily survive harmless error review on appeal. This Court will, of course, make its

20   decision on the merits of this *Salazar-Lopez* challenge without regard as to the standard of

21   appellate review of its decision. At this stage of the proceedings, the government's focus

22   on the appellate standard of review either emphasizes a completely irrelevant point, or

23   _____

24   docket entry #12)).

25           These intake errors are particularly problematic because – despite their very high
     sentences – illegal reentry cases are considered the "training grounds" for new AUSAs,
26   and there has been a very high turnover of experienced supervisors during (or because of)
     the Ryan administration.
27           Requiring the government to seek the *Salazar-Lopez*-compliant indictments (as is
28   done by every other California United States Attorney's Office) would serve as an
     important check on this intake procedure, and would help weed out low-guideline Section
     1326 cases erroneously referred for prosecution.

1   improperly urges this Court to deliberately err because appellate reversal is unlikely.

2       The government, moreover, is wrong. If this issue were ever to proceed to the

3   Ninth Circuit, that Court would review Mr. Herrera-Santos' challenge for *structural* error,

4   not harmless error.

5       In *Salazar-Lopez*, the Ninth Circuit devoted a considerable portion of its decision

6   to discussing the appropriate standard of review. *See Salazar-Lopez*, 506 F.3d at 752. The

7   Court of Appeals framed the issue as whether the clear deficiency in the indictment was

8   subject to harmless error review on appeal, or "is instead a 'structural error' automatically

9   entitling Salazar-Lopez to a resentencing." *Id.* at 752.

10      The government is correct that the Court ultimately determined that harmless error

11  was the appropriate standard of review. The government has not revealed, however, that

12  the Ninth Circuit arrived at that conclusion because Salazar-Lopez had not brought a pre-

13  trial challenge to the indictment, and had instead only raised his challenge at sentencing.

14  *Id.*

15      In *Salazar-Lopez*, the Court considered the defendant's attempt to analogize his

16  case to the Ninth Circuit's structural error decision in *United States v. Du Bo*, 186 F.3d

17  1177 (9th Cir. 1999). The Court quoted *Du Bo* in its analysis in *Salazar-Lopez*:

18
19      > We held in *Du Bo* "that, *if properly challenged prior to trial*, an indictment's
      > complete failure to recite an essential element of the charged offense is not a minor
      > or technical flaw subject to harmless error analysis, but a fatal flaw requiring
20      > dismissal of the indictment.*"*

21  *Salazar-Lopez*, 506 F.3d at 752, quoting *Du Bo*, 186 F.3d at 1179 (emphasis added).

22      The Court ultimately concluded that the *Salazar-Lopez* case was more analogous

23  to another of its decisions, *United States v. Jordan*, 291 F.3d 1091 (9th Cir. 2002).

24  Salazar-Lopez, 506 F.3d at 753. In *Jordan*, the Ninth Circuit considered a deficiency in

25  the indictment first challenged during the sentencing process. *Id*. (discussing *Jordan*, 291

26  F.3d at 1094). This was, obviously, similar to the procedure posture in the *Salazar-Lopez*

27  case. In *Jordan*, the Court ultimately adopted the harmless error standard.

28      Because Salazar-Lopez "raised his *Apprendi* claim post-trial in his objections to

the pre-sentence report, *see Jordan* . . . whereas in *Du Bo* the defendant objected to the

1  indictment '[m]ore than two months before trial,'" the Court in *Salazar-Lopez* concluded

2  that *Jordan*'s harmless error review was appropriate.

3  Of course, in the instant motion, Mr. Herrera-Santos objects to the indictment long

4  before a trial date has been set in the case. Indeed, the defense objected to this indictment

5  at the earliest possible opportunity, challenging an improper arraignment in the

6  *magistrate* court. In light of Mr. Herrera-Santos' (repeated) *pretrial* challenges to the

7  indictment, were this matter ever to proceed to the Ninth Circuit the analysis would be

8  under the structural error review standard dictated by *Du Bo*, and not the harmless error

9  standard set forth in *Jordan*.

10  Harmless error, structural error – none of these appellate standards of review are

11  relevant to the issue now before the Court. This Court need not (and indeed, can not)

12  decide what appellate standard of review the Ninth may use on any eventual appeal in this

13  case. It should reject any attempts by the government to import appellate standards of

14  review into district court litigation.

**V.    Mr. Herrera-Santos Requests a Referral to a Settlement Conference**

16  While the *Apprendi* requirements for enhancement facts in Section 1326 cases

17  presents fascinating legal issues, Mr. Herrera-Santos is more interested in resolving his

18  case than in plowing new legal ground. This case should settle.

19  The defense invites the government to join it in a request for a referral to a

20  settlement conference before the Honorable Joseph C. Spero. To preserve government

21  resources, the defense suggests that the government participate in a settlement conference

22  before it files is Opposition. Undersigned counsel would be glad to prepare a stipulated

23  order continuing the briefing and hearing schedule while the settlement conference took

24  place, and Mr. Herrera-Santos would agree to exclusion of time under the Speedy Trial

25  Act.

26  //

27  //

28  //

**Conclusion**

If the government agrees, the Court should refer this matter to a settlement conference. Undersigned counsel will meet with the government, agree on a delayed briefing schedule to accommodate a settlement conference, and will submit a proposed stipulated order reflecting that new schedule.

If the government declines the defense's invitation to participate in a settlement conference, the Court should either dismiss the current indictment as fatally defective, or it should remand the matter to the magistrate court with instructions that Mr. Herrera-Santos be re-arraigned and informed of the correct statutory maximum sentence for the offense alleged in the current indictment: twenty-four months of custody, and one year of supervised release.

Dated: March 14, 2008

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

/s

STEVEN G. KALAR
Assistant Federal Public Defender