BARRY J. PORTMAN
Federal Public Defender
STEVEN G. KALAR
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant Herrera-Santos

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-0764 SI |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S |
| | ) | SENTENCING |
| v. | ) | MEMORANDUM |
| | ) | |
| JUAN HERRERA-SANTOS, | ) | |
| | ) | |
| Defendant. | ) | **Hearing Date**: Friday, July 25, 2008 at 11:00 a.m. |

**Table of Contents**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.     Mr. Herrera-Santos Preserves his *Salazar-Lopez* Objection . . . . . . . . . . . . . . . . . . 4

II.    This Court Should Depart Downwards From Offense Level 17 Given the Minor Nature of Mr. Herrera-Santos's Prior Convictions . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.   This Court Should Depart Downwards to Criminal History Category III Because Category V Overstates the Seriousness of Mr. Herrera-Santos's
Criminal History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.   This Court Should Vary from the Guideline Range Under Section 3553(a), to Avoid Unwarranted Sentencing Disparity Between Mr. Herrera-Santos and Other "Fast-Track" Recipients in the Northern District . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.    The Court Should Vary from the Guideline Sentence Under Section 3553(a) in Light of the Refusal of the Bureau of Prisons to Grant a Reduction of Custodial Time for Successful Completion of the 500 Hour Residential Drug Treatment Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VI.   Because the Enhancement Fact of an Aggravated Felony Was Not Alleged, Proved Beyond a Reasonable Doubt, or Admitted, the Statutory Maximum Sentence is Twenty-Four Months . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## Table of Authorities

### Federal Cases

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998) . . . . . . . . . . . . . . . . . . . . . . . 15

*Koon v. United States*, 518 U.S. 81 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*McLean v. Crabtree*, 173 F.3d 1176 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Shepard v. United States*, 544 U.S. 13 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Banuelos-Rodriguez*, 215 F.3d 696 (2000) . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Charry Cubillos*, 91 F.3d 1342 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . 13

*United States v. Flores-Sanchez*, 477 F.3d 1089 (9th Cir. 2007) . . . . . . . . . . . . . . . 5, 15

*United States v. Liriano-Blanco*, 510 F.3d 168 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Marcial-Santiago*, 447 F.3d 715 (9th Cir. 2006) . . . . . . . . . . . . . . . . . 9

*United States v. Martinez-Ramos*, 184 F.3d 1055 (9th Cir. 1999) . . . . . . . . . . . . . . . . 13

*United States v. Pacheco-Soto*, 383 F. Supp. 2d 1198 (D.N.M. 2005) . . . . . . . . . . . . . 13

*United States v. Pacheco-Zapeda*, 234 F.3d 411 (9th Cir. 2001) . . . . . . . . . . . . . . . 5, 15

*United States v. Salazar-Lopez*, 506 F.3d 748 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . 4

*United States v. Sanchez-Rodriguez.*, 161 F.3d 556 (9th Cir. 1998) . . . . . . . . . . . . . . 4, 6

*United States v. Vasquez-Landaver*, 527 F.3d 798 (9th Cir. 2008) . . . . . . . . . . . . . . . 11

### Federal Statutes

18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

1  BARRY J. PORTMAN
   Federal Public Defender
2  STEVEN G. KALAR
3  Assistant Federal Public Defender
   450 Golden Gate Avenue
4  San Francisco, CA 94102
5  Telephone: (415) 436-7700

6  Counsel for Defendant Herrera-Santos

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

12 | UNITED STATES OF AMERICA,    )   No. CR 07-0764 SI
                                 )
13 |     Plaintiff,               )   DEFENDANT'S
                                 )   SENTENCING
14 |   v.                         )   MEMORANDUM
                                 )
15 |                              )
   | JUAN HERRERA-SANTOS,         )
16 |                              )
                                 )
17 |     Defendant.               )   **Hearing Date**: Friday, July 25,
   |_____)   2008 at 11:00 a.m.
18

19                         **Introduction**

20      Because of deficiencies in the indictment and in the facts supporting this illegal

21 reentry conviction, Mr. Herrera-Santos respectfully requests that this Court impose a

22 sentence of twenty-four months.

23      The defense concedes, however, that this Court has already denied its *Salazar-*

24 *Lopez* motion and raises this issue at sentencing solely to preserve it for appeal.

25 Nonetheless, the Court should still impose a sentence of twenty-four months based on

26 departures from the Sentencing Guidelines, and variances from those guidelines under

27 Section 3553(a) of Title 18.

28

*Herrera-Santos*, CR 07-0764 SI
DEF. SENT. MEM.

**Background**

Mr. Herrera-Santos is the abused child of an alcoholic step-father, who found himself homeless, addicted, and forced to associate with gang members in Tijuana as a teenager to survive. Every criminal contact that he has had in his entire life has had one driving factor in common: his long-term addiction to drugs. This defendant is a street-level, hand-to-hand dealer who sells to support his habit. A four-year guideline sentence for his illegal reentry is unwarranted.

Mr. Herrera-Santos was born in 1981 in Mexico City, but moved when he was only months old to the impoverished Mexican state of Chiapas. *PSR* at 12 ¶ 46. Throughout his childhood, the defendant was bewildered by the love and affection shown to his younger sister – and the abuse and neglect that he suffered.

It was only when his grandmother pulled him aside when he was ten, that Mr. Herrera-Santos learned that the man he had thought his biological father was actually his stepfather. *Id.* at 12 ¶ 47. (The defendant's sister is the child of the union of his stepfather and mother). Mr. Herrera's stepfather was alcoholic and abusive, and the combination of the abuse and the different treatment of the young Mr. Herrera-Santos eventually drove him out of the household.

By the time he was fourteen, Mr. Herrera-Santos was homeless and living on the streets of Tijuana, hundreds of miles from his family in Chiapas. For years as a teenager he survived by shuttling between the homeless shelters in Tijuana. *Id.* at 12 ¶ 48. It was here that he fell in with "street people," became addicted to drugs, and obtained the tattoos that have (inaccurately) branded him as a Sureño gang member ever since.

Pervasive and complete addiction has haunted this man ever since. He is addicted to crack cocaine and crystal methamphatamine. *PSR* at 14-15. He has candidly admitted his addiction to the Probation Officer and is seeking treatment while incarcerated.

//
//
//

**Discussion**

**I.    Mr. Herrera-Santos Preserves his *Salazar-Lopez* Objection**

As noted in the introduction of this sentencing memorandum, Mr. Herrera-Santos preserves his objection to any sentence above twenty-four months based on deficiencies in the indictment and the absence of proof of key sentencing enhancement facts. *See United States v. Salazar-Lopez*, 506 F.3d 748 (9th Cir. 2007).

After full briefing and oral argument, this Court has rejected the defendant's *Salazar-Lopez* motion in a written order. *United States v. Juan Herrera-Santos*, CR 07-00764 SI (N.D. Cal. Apr. 21, 2008) (ord.) The defense does not now seek reconsideration of that order at sentencing. Instead, Mr. Herrera-Santos incorporates his arguments made in his Memorandum in Support of the Motion to Dismiss the Indictment and Reply in this sentencing memorandum, and objects to any sentence imposed in excess of twenty-four months. This objection is now renewed at sentencing to preserve the issue for appeal.

**II.    This Court Should Depart Downwards From Offense Level 17 Given the Minor Nature of Mr. Herrera-Santos's Prior Convictions**

Long before *Apprendi*, *Blakely*, or *Booker*, this Court presaged the increased discretion that would be afforded to the district courts from the mandatory Sentencing Guidelines. That decision was endorsed by a landmark *en banc* decision of the Ninth Circuit in *United States v. Sanchez-Rodriguez*. 161 F.3d 556 (9th Cir. 1998) (*en banc*).

Of the many important holdings in *Sanchez-Rodriguez*, one bears particular emphasis: the ability of the district court to depart downwards from the sentencing guideline range based on the minor nature of a predicate felony. *Id.* at 560 ("[T]he Commission has not precluded consideration of the nature of a defendant's predicate felony. We may not categorically forbid departure on this basis.")

As the Court will recall, in *Sanchez-Rodriguez* the defendant stood convicted of illegal reentry. *Id.* at 559. He had received a three year prison term for the sale of a controlled substance. *Id.* The underlying predicate felony – that is, the felony responsible for the specific offense increase under USSG § 2L1.2 – was a $20 heroin sale for which

Sanchez Rodriguez "received three years probation (later revoked) and 90 days in county jail." *Id.*

With acceptance of responsibility, the ultimate offense level for this defendant was twenty-one. *Id.* This Court departed *nine levels* and imposed a sentence of thirty months. *Id.*[1] One of the explicit bases for this departure was the minor nature of Mr. Sanchez-Rodriguez's predicate felony. *Id.*

Writing for the *en banc* Court, Judge Betty Fletcher turned to the Supreme Court's (then recent) decision in *Koon v. United States*, 518 U.S. 81 (1996). *Id.* at 560. Given *Koon*, Judge Fletcher explained that the Circuit could no longer "categorically forbid departures" based on the "nature of a defendant's predicate felony." *Id.*

Much has changed in the arena of federal sentencing in the decade since *Sanchez-Rodriguez*. What has not changed, however, is the validity of this core holding of the decision. As it did in *Sanchez-Rodriguez*, this Court should depart downwards in the present case given the minor nature of Mr. Herrera-Santos's predicate felonies.[2]

The presentence report relies upon a May 15, 2000 felony for a specific offense characteristic increase of twelve levels. *See PSR* at 5 ¶ 17. Just as was true for Mr. Sanchez-Rodriguez, in the present case Mr. Herrera-Santos received a sentence of three years probation and ninety days jail for that offense. *Id.*

---

[1] It is unclear from the *Sanchez-Rodriguez* decision exactly how many levels were reduced due to the minor nature of the predicate felony. *See id.* at n.4 (reporting a reduction of between one and four levels given the minor nature of the predicate felony).

[2] In this memorandum Mr. Herrera-Santos preserves his objection to the use of any prior felony conviction to enhance his sentence when that sentencing enhancement fact was not alleged in the indictment and proved beyond a reasonable doubt to a jury. That argument, however, has been rejected by the Ninth Circuit. *See, e.g., United States v. Pacheco-Zapeda*, 234 F.3d 411 (9th Cir. 2001); *see also United States v. Flores-Sanchez*, 477 F.3d 1089, 1093 (9th Cir. 2007). It is raised in this sentencing memorandum solely to preserve the issue for appellate review. In light of that authority, Mr. Herrera-Santos here presents arguments regarding the predicate felony without waiving his *Apprendi* challenge to the use of that felony at sentencing.

In *Sanchez-Rodriguez,* the predicate felony was the sale of $20 worth of heroin. The Ninth Circuit endorsed this Court's evaluation that this $20 sale was not "was not comparable to, and not proportional to, the typical crimes of defendants who receive the 16-level enhancement." *Sanchez-Rodriguez*, 161 F.3d at 561. Similarly, in the present case, Mr. Herrera-Santos was convicted in 2000 for sale of one "small white rock" of cocaine. *PSR* at 7 ¶ 31.

The hand-to-hand sale of one "small white rock" of cocaine is as minor an offense as possible within the predicate felony definition of USSG § 2L1.2(b)(1)(B). Contrasted to large-scale felony drug sales, with state prison sentences in excess of one year, Mr. Herrera-Santos's crime is "not comparable to, and not proportional to, the typical crimes of defendants who receive" this specific offense characteristic increase. *Sanchez-Rodriguez*, 161 F.3d at 561.

Moreover, Mr. Herrera-Santos's bases for this departure is more compelling than the case made for Mr. Sanchez-Rodriguez in several respects. First, Sanchez-Rodriguez appeared in this Court on an illegal reentry conviction after having received a *three year state prison term* for sale of a controlled substance. *Id.* at 559. By contrast, Mr. Herrera-Santos has never received a sentence longer than one year of county jail – and that was for a probation violation.[3] With a three-year state prison term for drug sales, Mr. Sanchez-Rodriguez was a serious drug dealer when he appeared before this Court on illegal reentry charges. Mr. Herrera-Santos, by contrast, is a petty hand-to-hand dealer who sells gram quantities to support his own habit. *See PSR* at 6 ¶ 30 (hand-to-hand sale of two rocks); *Id.* at 7 ¶ 31 (hand-to-hand sale of one rock); *id.* at 8-9 ¶ 33 (hand-to-hand sale of two rocks for $20); *id.* at 9 ¶ 34 (hand to hand sale of a few rocks); *id.* at 10 ¶ 34 ("Herrera-Santos admitted his involvement in the offense and indicated that he had been involved in drugs due to his untreated addiction problem. He states he had been dealing drugs to support his own habit, but expressed he wanted to 'leave his drug use behind.'")

---

[3] *See PSR* at 8 ¶ 33.

In addition, Mr. Herrera-Santos was extremely young when he committed the predicate felony used in the presentence report to increase his guideline range by twelve levels. On December 17, 1999 – the date of the offense – the defendant was eighteen years, four months old.[4] Had the offense taken place four months and ten days earlier – when the defendant was a juvenile – it would not have counted as a predicate felony that triggered a twelve offense level increase. *See* USSG § 2L1.2 comment n. 1(A)(iv). The very young age at which this very minor offense was committed is another factor that merits a departure.

Given the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," the minor nature of the predicate felony in this case is "sufficient to take the case out of the Guideline's heartland." *Koon*, 518 U.S. at 96. This is one of the factors that merits a downward departure from the guideline range, and a sentence of twenty-four months of custody.

**III. This Court Should Depart Downwards to Criminal History Category III Because Category V Overstates the Seriousness of Mr. Herrera-Santos's Criminal History**

This Court should depart downwards to Criminal History Category III, because Criminal History Category V substantially overstates the seriousness of Mr. Herrera-Santos' criminal history.

Downward departures for overstatement of criminal history are explicitly endorsed

---

[4] The defense has provided the Probation Office with a copy of Mr. Herrera-Santos's birth certificate, but the incorrect birth date remains throughout the report. Mr. Herrera-Santos's birth date is August 8, 1981. If requested, undersigned counsel will provide the Mexican birth certificate to the Court at sentencing for its inspection. On the ill-advised advise of a young colleague, Mr. Herrera-Santos provided an incorrect date of birth when he was first arrested on March 26, 1999, to avoid immigration consequences that then befell immigrant juveniles. (He was seventeen years old on that date).

That false date of birth has followed him through his later convictions and A-file documents. The defense asks the Court to rule on this objection and to order that the correct date of birth be reflected in the presentence report.

by the federal sentencing guidelines. *See* USSG § 4A1.3(b)(1). Such departures are warranted when the criminal history category "substantially over-represents" the seriousness of the defendant's criminal history. *Id.*

With a number of arrests and deportations, Mr. Herrera-Santos may not initially appear a strong candidate for this departure. A close examination of his record, however, reveals that he is a far cry from the typical defendant in Criminal History Category V.

First, the Court should either explicitly reject or should discount the criminal history point awarded to Mr. Herrera-Santos for the March 1999 misdemeanor accessory conviction (for which the defendant received two days in jail). *See PSR* at 6 ¶ 30. As stated in the defense objections, Mr. Herrera-Santos was actually a juvenile at the time of this conviction and should not have been prosecuted in adult court.

As described above, Mr. Herrera-Santos is an admitted drug addict who has not received desperately-needed treatment, and who sells small amounts of drugs to support his own habit. Save for one illegal reentry conviction, every conviction reported in the PSR reflects precisely this pattern. Indeed, every police contact confirms that the defendant is a small-time street dealer hustling to feed his own addiction. *See, e.g., PSR* at 11 ¶ 42 ("[Herrera-Santos] told police that he smokes crack and was [in the Tenderloin] to purchase crack.") Notably, there is not one conviction in the presentence report that earns three criminal history points.

The typical Criminal History Category V defendant is not perched at the high-end of the guideline table because of a number of hand-to-hand sales, brief county jail sentences, and two-point convictions. In fact, if one totaled *all* of Mr. Herrera-Santos hand-to-hand, one- or two-rock sales the total amount of cocaine would be an insignificant fraction of a *single* cocaine sale for the typical Category V defendant. This Court should accordingly depart downwards from Criminal History Category V, to Category III – a category which far better represents the "seriousness of the defendant's criminal history." USSG § 4A1.3(b)(1).

**IV. This Court Should Vary from the Guideline Range Under Section 3553(a), to Avoid Unwarranted Sentencing Disparity Between Mr. Herrera-Santos and Other "Fast-Track" Recipients in the Northern District**

This Court should vary from the guideline range to avoid unwarranted discrepancies in this district between illegal reentry defendants who receive the "fast track" disposition, and similarly-situated defendants who are denied this deal. *See* 18 USC § 3553(a)(6) ("The court, in determining the particular sentence to be imposed, shall consider – the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.")

There is no greater evidence of the dissonance between the politically-driven sentencing policies of the East, and the realities of actual practice in the West, than fast-track policies for illegal reentry cases. Originally concocted in the Southern District of California – and later adopted by California's Northern and Eastern Districts – the old fast-track policy awarded quick pleas with twenty-four months deals that were often less than half of the actual guideline range. *See United States v. Banuelos-Rodriguez*, 215 F.3d 696, 971 (2000) (describing fast track policies in California); *see also United States v. Marcial-Santiago*, 447 F.3d 715, 718 (9th Cir. 2006) (discussing fast track policies in the Ninth Circuit before and after the PROTECT ACT).

Fast-track policies evolved – or devolved – in the face of criticism that these policies were inequitably applied across federal districts. The "new" fast-track policy reflected a Congressional directive that only permits a four-level reduction for an "early disposition program." *See* USSG § 5K3.1 (implementing Section 401(m)(2)(B) of the PROTECT Act of 2003). Fast-track deals tracking this guideline have been adopted in at least thirteen of the ninety-four federal districts. *United States v. Liriano-Blanco*, 510 F.3d 168, 169 (2007). In essence, the fast-track disposition awards an additional four levels off of the guideline range (post-acceptance) in return for an early plea of guilt and a sentence at the low-end. In Mr. Herrera-Santos's case, this would have resulted in a guideline range of Criminal History V, Offense Level 13: thirty months.

1    Mr. Herrera-Santos sought this deal at his first appearance before the magistrate,
2 and renewed his offer to plead guilty to the fast-track disposition before every stage of the
3 proceedings and before every step of the *Salazar-Lopez* briefing. The government has
4 refused to extend this offer to Mr. Herrera-Santos – while simultaneously extending fast-
5 track offers to other similarly-situated defendants.
6    One example of this disparity is *United States v. Ely Sau Chapas-Aguilera*, CR 07-
7 0763-01 WHA. Mr. Chapas-Aguilera is nearly identically situated to Mr. Herrera-Santos.
8 That defendant received the fast-track deal; Mr. Herrera-Santos, inexplicably, did not.
9    Mr. Chapas-Aguilara was indicted for illegal reentry on December 4, 2007. *See*
10 *Exhibit A, Indictment*. Mr. Herrera-Santos was indicted on the same day, and presumably
11 before the same grand jury.
12    Mr. Chapas-Aguilera had at least six deportations, in 2002, 2003, 2004, 2005, and
13 2007. *See Exhibit B, Plea Agreement*. Mr. Herrera-Santos is alleged to have eight
14 deportations. *PSR* at 19 ¶ 90.
15    Mr. Chaps-Aguilera has been convicted *twice* of illegal entry. In 2004, Mr.
16 Chapas-Aguilera was convicted for illegal entry in the Southern District of California and
17 received a seventy-five day sentence. Dkt. No. 04-10162-001 M-SD. Chapas-Aguilera
18 had another immigration offense in 2006, eluding examination and inspection (8 USC §
19 1325(a) for which he received 136 days BOP custody. CR 06-292 RE.
20    By contrast, Mr. Herrera-Santos has *one* immigration offense: in 2005, he was
21 convicted of illegal entry in the District of Arizona and received a sentence of sixty days
22 jail. *PSR* at 8 ¶ 32.
23    Mr. Chapas-Aguilera was Criminal History Category IV. As noted above, Mr.
24 Herrera-Santos is Criminal History Category V (though this overstates the seriousness of
25 his prior criminal history).
26    Mr. Chapas-Aguilera was promptly offered a fast track deal, plead, and was
27 sentenced within two months of his initial appearance. Judge Alsup imposed a sentence of
28 twenty-four months on February 1, 2008. Although Mr. Herrera-Santos requested the

same fast-track disposition, sought that deal repeatedly, offered to waive indictment, and sought a resolution before every step in the *Salazar-Lopez* challenges, the government refused him the deal. This defendant now faces a guideline range that is double the sentence of Mr. Chapas-Aguilera: 46 to 57 months.

The government will undoubtably counter that fast track was denied because Mr. Herrera-Santos is a gang member. He is not. When he was extremely young, in Tijuana, he was tattooed with gang-associated tattoos. He has never, however, been arrested in gang-related activity in the United States. He is not an active Sureño gang member. While he does state his previous Sureño affiliation when he is incarcerated, this is only to avoid being attacked by Norteño gang members in the general jail population because of his tattoos. If it is available. Mr. Herrera-Santos would like to participate in a program to have these gang tattoos removed – hardly the actions of an active gang member. To characterize this rather pathetic, cocaine-addicted homeless man as an active Sureño gang member is neither accurate nor persuasive.

This is not a case where a defendant is offered a fast-track deal, litigates a case, then complains when his guideline range is higher than the original offer. *Cf. United States v. Vasquez-Landaver*, 527 F.3d 798, 805 (9th Cir. 2008). Mr. Herrera-sought the offer, sought to avoid litigation, and was denied the deal given to other similarly-situated defendants.

Section 3553(a) of Title 18 expressly directs the sentencing court to impose a sentence "no greater than necessary" to avoid unwarranted disparities between similarly situated defendants. Because there is no meaningful distinction between Mr. Herrera-Santos and other contemporaneous defendants who received the fast-track disposition, this Court should vary from the guideline range and impose a sentence of twenty-four months.

## V. The Court Should Vary from the Guideline Sentence Under Section 3553(a) in Light of the Refusal of the Bureau of Prisons to Grant a Reduction of Custodial Time for Successful Completion of the 500 Hour Residential Drug Treatment Program

During his probation interview, Mr. Herrera-Santos candidly admitted his serious drug addiction problem and sought treatment while in custody. *See PSR* at 14-15 ¶¶ 58-61. While the Bureau of Prisons may permit Mr. Herrera-Santos to participate in a drug treatment program, it will not allow a reduction in his custodial sentence to reward his successful completion of the program.

In 1990, Congress first created the structure for residential substance abuse treatment for federal prisoners. *See* 18 USC § 3631. To increase participation in the program, in 1994 Congress created an incentive of a sentence reduction of up to one year for successful completion of this program. *Id.* at § 3621(e). Under the authorizing statute, this sentencing reduction is only available to non-violent offenders. The program ultimately created by the Bureau of Prisons is called the "Residential Drug and Alcohol Program," or "RDAP."

While there is nothing in the statute that excludes deportable aliens from participating in the RDAP program and receiving a reduction in their sentence, the B.O.P. has created a requirement of community confinement at the end of the term. Because aliens with ICE detainers cannot be released to community confinement at the end of their term they cannot "complete" RDAP – and thus are all denied the one-year sentence reduction given to non-alien inmates who complete the program. *See* Stephen Sady & Lynn Deffebach, *The Sentencing Commission, the Bureau of Prison's, and the Need for Full Implementation of Existing Ameliorative Statutes to Address Unwarranted and Unauthorized Over-Incarceration*, June 2008, at 11, available at http:// or.fd.org/ symp2.final% 20for%20pdf.pdf.

Thus, Mr. Herrera-Santos cannot receive the one-year reduction granted to non-alien inmates for successful completion of "RDAP."

The Ninth Circuit has rejected statutory and constitutional challenges by alien federal inmates to the B.O.P.'s RDAP policy. *See McLean v. Crabtree*, 173 F.3d 1176, 1179-80 (9th Cir. 1999). The Court has, however, recognized a sentencing court's discretion to take this disparity into account at sentencing.

Even before the *Booker* sentencing revolution, the Ninth Circuit endorsed the district court's ability to depart downward from the guidelines given a defendant's status as a deportable alien and the collateral consequences flowing from that status. *See United States v. Pacheco-Soto*, 383 F. Supp. 2d 1198, 1205 (D.N.M. 2005) (collecting cases); *see also United States v. Charry Cubillos*, 91 F.3d 1342, 1344 (9th Cir. 1996) (acknowledging discretion to part on this basis and remanding for further fact-finding).

The Ninth Circuit later limited the ability to depart because an alien would be deported, because *all* illegal reentry defendants were necessarily aliens and their ultimate deportation was presumably considered by the Sentencing Commission. *United States v. Martinez-Ramos*, 184 F.3d 1055, 1059 (9th Cir. 1999) (limiting discretion to depart based on certain *deportation* of alien, in illegal reentry cases).

*Martinez-Ramos* does not, however, preclude a departure in Mr. Herrera-Santos's case. That decision prohibited departures based on the certain deportation for all Section 1326 aliens. The departure basis urged by Mr. Herrera-Santos, by contrast, does *not* arise for all aliens – it is the distinct minority who request, and will likely be denied, drug treatment. This disparate treatment was not anticipated by the Sentencing Commission.

Moreover, it is of merely historic interest whether a departure was encouraged or discouraged before the watershed *Booker* decision. The sentencing factors found at Section 3553(a) support a variance in light of this discrepancy, separately and in addition to any guideline departure.

The B.O.P's policy toward alien addicts is tremendously unjust and illogical – and particularly so in this case. Mr. Herrera-Santos is being punished because he is an alien who entered the United States illegally and sold drugs to support his decades-old habit. Addiction is at the heart of all of the criminal conduct in this case and the B.O.P's

treatment program is just what is needed – RDAP is touted as shaving 16% off of the recidivism rate of federal inmates. *See Department of Justice Publication on 2009 Budget and Drug Policy* at 88, available at http:// www.whitehousedrugpolicy.gov/ publications/ policy/ 09budget/ justice.pdf .

While in custody, however, Herrera-Santos will not receive the incentive given to other non-alien inmates for successful completion of drug treatment. He will not receive this reduction solely because he is an alien who has an ICE detainer. Indeed, there is a real question whether he will make it into the RDAP treatment program at all: citizens who can receive the year reduction typically cut to the front of the very long line for the program.

When imposing a sentence, this Court must consider the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 USC § 3553(a)(2)(D). It must also seek to avoid "unwarranted sentence disparities among defendants with similar records." *Id.* at § 3553(a)(6). The Bureau of Prison's refusal to grant the RDAP one-year reduction incentive to alien inmates does not provide "correctional treatment in the most effective manner," and promotes disparities between alien and non-alien defendants who complete the RDAP process. This Court should accordingly recommend that Mr. Herrera-Santos participate in the RDAP program, and should vary one year downward from the guideline range under Section 3553(a), to arrive (with the other departures and variances urged) at a sentence of twenty-four months.

**VI.    Because the Enhancement Fact of an Aggravated Felony Was Not Alleged, Proved Beyond a Reasonable Doubt, or Admitted, the Statutory Maximum Sentence is Twenty-Four Months**

To preserve the issue for a petition for appellate review, the defendant objects to any sentence in this case in excess of the twenty-four month statutory maximum permitted under Section 1326(a) of Title Eight. *See* 8 USC § 1326. Specifically, Herrera-Santos objects under the Fifth and Sixth Amendments to a sentence in excess of this

1 statutory maximum sentence of twenty-four months, when the sentencing enhancement
2 fact of an aggravated felony has not been alleged in the indictment, proven at trial, or
3 admitted in a plea of guilt.
4     This argument has admittedly been rejected by the Ninth Circuit. *See, e.g., United*
5 *States v. Pacheco-Zapeda*, 234 F.3d 411 (9th Cir. 2001); *see also United States v. Flores-*
6 *Sanchez*, 477 F.3d 1089, 1093 (9th Cir. 2007). The Supreme Court, however, has not
7 revisited the issue of whether prior convictions are enhancement facts that must be
8 alleged and admitted to trigger higher statutory maximum sentences under the Fifth and
9 Sixth Amendments – despite agreement by a majority of Justices that these enhancement
10 facts must be plead and proved beyond a reasonable doubt to a jury. *See Shepard v.*
11 *United States*, 544 U.S. 13, 27 (2005) (Thomas, J., concurring in part and concurring in
12 the judgment) ("*Almendarez-Torres*, like *Taylor*, has been eroded by this Court's
13 subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes
14 that *Almendarez-Torres* was wrongly decided. *See* 523 U.S., at 248-249, 118 S. Ct. 1219,
15 *28 (SCALIA, J., joined by STEVENS, SOUTER, and GINSBURG, JJ., dissenting);
16 *Apprendi*, supra, at 520-521, 120 S.Ct. 2348 (THOMAS, J., concurring.)")
17     Therefore, Herrera-Santos raises this challenge to preserve the issue for appeal,
18 certiorari, and, if necessary, for his petition for a writ of habeas corpus when the
19 *Almendarez-Torres* decision is overturned. *Almendarez-Torres v. United States*, 523 U.S.
20 224 (1998).
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

**Conclusion**

For the foregoing reasons, Mr. Herrera-Santos respectfully requests that the Court impose a sentence of twenty-four months of custody.

Dated: July 18, 2008

                                    Respectfully submitted,

                                    BARRY J. PORTMAN
                                    Federal Public Defender

                                    /s

                                    STEVEN G. KALAR
                                    Assistant Federal Public Defender