JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

TAREK J. HELOU (CABN 218225)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California  94102
   Telephone:     (415) 436-7071
   Facsimile:      (415) 436-7234
   Tarek.J.Helou@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 07-764 SI |
|     Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
|   v. | Hearing Date:  July 25, 2008 |
| JUAN HERRERA-SANTOS, | Time:  11:00 a.m. |
|     Defendant. | Judge:  The Honorable Susan Illston |

**I.
INTRODUCTION**

Defendant Juan Herrera-Santos pleaded guilty without a plea agreement to illegally reentering the United States in violation of 18 U.S.C. § 1326.  The defendant is an unrepentant, drug dealing gang member.  He has no respect for this country's laws.  Since 1999, he has been arrested selling drugs eight times.  He also has been deported from the United States eight times. His life has not deviated from a single, repetitive cycle: (1) sell drugs; (2) get arrested; (3) avoid

serious prison time; (4) get deported; and (5) illegally reenter the United States.

The defendant never found time to care for his children, never found time to get a job, never found time to get an education, and never found time to learn a trade. But he did find time to join the Surenos, one of California's largest, most violent street gangs. The defendant has admitted that he is a Sureno to law enforcement officers several times, including when he was arrested on these charges. He has several tattoos showing off his membership in the gang. When SFPD officers arrested the defendant last fall, he was wearing Sureno colors while selling drugs on Sureno turf. He had been arrested while selling drugs in the same area seven times before.

The defendant refused to discuss his gang affiliation with the Probation Office during his pre-sentence interview because he knew his gang membership could increase his sentence for this crime. The Probation Office still concluded that he is a Sureno because no evidence said otherwise. The defendant then lied to his Probation Officer by stating, through his attorney in his objections to the Draft PSR, that he is not a Sureno and has not been one for several years. That statement was false. The defendant did not want his PSR to say that he is a Sureno because he thought he would get a lower sentence if the Court did not know he is a gang member.

The Court should not let the defendant refuse to answer questions about his gang membership, then have his attorney falsely deny it. The Court should increase his Guidelines range by two levels because his statement through his attorney obstructed justice. The defendant had the right not to discuss his gang membership, but he did not have the right to lie about it.

The defendant's current crime and his obstruction of justice warrant a sentence at the middle of the Guidelines range, 64 months. If the Court does not add the enhancement for obstruction, it should account for the defendant's attempt to mislead his probation officer and sentence him to the high end of the guidelines range calculated in the PSR, 57 months.

## II.
## BACKGROUND AND STATEMENT OF FACTS

**A.    The Defendant Has Already Been Deported Eight Times**

The defendant first entered the United States illegally in 1997. (PSR, ¶ 50.) He stayed in

the country until 2001, when he was deported after being released from jail following his 2000 conviction for possessing crack cocaine for sale. (PSR, ¶¶ 31, 49.) In total, the defendant has been arrested selling drugs eight times, and deported eight times. Without addressing each of the defendant's arrests and deportations in detail, the table below shows relevant facts about them.

| Date | Incident | Charge of Arrest or Conviction | Penalty | PSR |
|---|---|---|---|---|
| 3/26/1999 | Arrested | Accessory selling crack | 2 days jail | ¶ 30 |
| 12/17/1999 | Arrested | Possess crack for sale | 90 days jail | ¶ 31 |
| 10/3/2001 | | Deported | | ¶ 7 |
| 7/26/2002 | Arrested | Selling marijuana | Probation violation | ¶ 38 |
| 9/7/2002 | | Deported | | ¶ 7 |
| 2/26/2003 | Arrested | Selling drugs | Probation violation | ¶ 39 |
| 4/9/2003 | | Deported | | ¶ 7 |
| 12/4/2004 | Arrested | Drunk in public | Dismissed | ¶ 40 |
| 2/5/2005 | Arrested | Selling crack | Dismissed | ¶ 41 |
| 4/22/2005 | | Deported | | ¶ 7 |
| 5/4/2005 | Arrested | Illegal entry | 60 days jail | ¶ 32 |
| 7/1/2005 | | Deported | | ¶ 7 |
| 7/27/2005 | Arrested | Concealing evidence, using drugs | 1 year jail | ¶ 33 |
| 11/30/2005 | | Deported | | ¶ 7 |
| 4/28/2006 | Arrested | Illegal drug activity | Dismissed | ¶ 42 |
| 5/27/2006 | Arrested | Child passenger restraint / FTA | Unknown | ¶ 43 |
| 7/28/2006 | Arrested | Selling crack | 6 months jail | ¶ 34 |
| 11/28/2006 | | Deported | | ¶ 7 |
| 2/22/2007 | | Deported | | ¶ 7 |
| 9/16/2007 | Arrested | Selling drugs | Probation violation | ¶ 44 |

**B.    A Grand Jury Indicted The Defendant For Illegal Reentry, And He Pleaded Guilty Without A Plea Agreement**

On September 16, 2007, the defendant was arrested for selling drugs in the Tenderloin neighborhood of San Francisco. (PSR, ¶ 44.) When the defendant was arrested, he was wearing colors and clothing affiliated with the Surenos street gang. (PSR Addendum, ¶ 2; Declaration of

SFPD Sergeant Dean Ries, ¶ 4.)  He had been selling drugs in an area known to be Surenos' drug dealing turf.  (PSR Addendum, ¶ 2; Ries Decl., ¶ 3.)  The defendant admitted to violating his probation from a previous drug dealing conviction, and the charges were dismissed.  (PSR, ¶ 44.)  ICE agents arrested him soon after.  (PSR, ¶ 6.)

On December 4, 2007, a grand jury indicted the defendant, alleging that he illegally reentered the United States, in violation of 8 U.S.C. § 1326.  (PSR, ¶ 1.)  That was not the first time the defendant faced criminal immigration charges: he pleaded guilty to illegal entry, in violation of 8 U.S.C. § 1325, in 2005.  (PSR, ¶ 32.)

On April 25, 2008, the defendant pleaded guilty in this case without a plea agreement, and admitted to all of the elements of the charged crime.  (PSR, ¶ 2-3.)  He admitted that he is a citizen of Mexico, that he has never been a U.S. citizen, that he had been deported eight times, that he was later found in the United States, and that he had not asked for or received permission to reenter the country from the Attorney General or the Secretary of Homeland Security.

**C.    In The Draft PSR, The Probation Office Calculated The Defendant's Guidelines Offense Level At 17, With His Criminal History at CHC-V**

The Probation Office calculated the defendant's total offense level at 17 in his Draft PSR.  (PSR, ¶ 26.)  The Probation Office applied a base offense level of eight, added 12 points because the defendant was convicted of possessing crack cocaine for sale, and deducted three points because he accepted responsibility for his crime and did not force the government to prepare for trial. (PSR, ¶¶ 16-26.)

The government agreed with the Probation Office's calculation when it responded to the Draft PSR, but now requests that the Court add two levels for obstruction of justice based on a false statement in the defendant's objections to the Draft PSR, as discussed below.

**D.    The Defendant Falsely Disclaimed His Gang Membership To His Probation Officer In His Response To The Draft PSR**

On May 13, 2008, Probation Officer Aylin Raya interviewed the defendant during her pre-sentence investigation in this case.  (PSR, ¶ 45.)  During that interview, the defendant refused to answer any questions about his gang affiliation.  (PSR, ¶ 56.)  Probation Officer Raya

then sent the parties the Draft PSR, which included several paragraphs about the defendant's gang affiliation. (PSR Addendum, ¶¶ 2, 8, 10, 12.)

The defendant later claimed, in his objections to the Draft PSR, that he has not been a Sureno for many years. (PSR Addendum, ¶ 9.) The defendant did not give the Probation Office any evidence corroborating that claim. That claim is false; significant evidence shows that he is still a Sureno, including his own statements. (PSR Addendum, ¶¶ 2, 8, 10, 12; PSR ¶ 56.)

### III.
### LEGAL STANDARD AT SENTENCING

Under Ninth Circuit case law, the Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The purposes identified in § 3553(a)(2) are: (A) to provide just punishment for the offense; (B) to deter future criminal conduct; (C) to protect the public from further crimes by the defendant; and (D) to give the defendant a chance to rehabilitate himself. The Court should begin the process of determining an appropriate sentence by calculating the correct guidelines range. *Carty*, 520 F.3d at 991.

Although the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 127 S. Ct. 2456, 2464 (2007). The guidelines range will be the starting point and the initial benchmark for the sentence. *Carty*, 520 F.3d at 991. The Court should keep the guidelines range in mind throughout the process, allow the parties to argue for a sentence they believe is appropriate, and consider the factors identified in 18 U.S.C. § 3553(a). *Id.*

If the Court imposes a sentence outside the guidelines range, it should ensure that its justification for deviating from the range is sufficiently compelling to support the degree of variance in the sentence that it imposes. *Carty*, 520 F.3d at 991. The Court should make an individualized determination based on the facts of each case. *Id.* The Court, however, is not required to raise every possible relevant issue sua sponte. *Id.* Finally, the Court should explain sufficiently the sentence that it imposes to allow meaningful appellate review. *Id.* at 992.

**IV.**
**64 MONTHS IN PRISON IS THE APPROPRIATE SENTENCE**

**A.    The Correct Guidelines Range Is 57-71 Months In Prison**

**1.    The Correct Guidelines Calculation Is Level 19**

The following sentencing guidelines calculation is correct:

| | | |
|---|---|---|
| Base offense level | USSG §2L1.2(a) | 8 |
| Defendant was deported after a felony conviction for a drug trafficking crime with a sentence of 13 months or less | USSG §2L1.2(b)(1)(B) | +12 |
| Defendant obstructed justice by lying to the Probation Office | USSG §3C1.1, comment. (n.4(h)) | +2 |
| Acceptance of responsibility | USSG §3E1.1(a)-(b) | -3 |
| Total offense level | | 19 |

The Probation Office calculated the defendant's offense level as 17.  (PSR, ¶ 26.)   The Probation Office's calculation is the same as the government's calculation, except the Probation Office did not include the two level enhancement for obstruction of justice.  (PSR, ¶ 26.)  The parties agree that the base offense level for a violation § 1326 is eight.  USSG §2L1.2(a).

  **a.    The Defendant's Conviction For Possessing Crack Cocaine For Sale Warrants a 12 Level Increase**

The Court should add 12 points to the defendant's offense level because he was deported after being convicted of a "drug trafficking" offense.  On April 13, 2000, the defendant pleaded guilty to possessing crack cocaine for sale in violation of California Health and Safety Code § 11351.5 and served 90 days in jail.  (Ex. A to Gov't Sent. Mem.)  That crime is a "drug trafficking" crime.  USSG §2L1.2 (comment. n. 1(iv)); *United States v. Morales-Perez*, 467 F.3d 1219, 1223 (9th Cir. 2006).  He was deported eight times after that conviction.  (PSR, ¶ 7.)

  **b.    The Defendant's Obstruction Of Justice Warrants A Two Level Increase**

The Court should increase the defendant's guidelines calculation by two levels because he obstructed justice when he falsely informed Probation Officer Raya that he is not a Sureno in

his objections to his Draft PSR. Under USSG § 3C1.1, the Court should add the enhancement because the defendant provided materially false information to his probation officer. USSG § 3C1.1, comment. (n.4(h)). Evidence is "material" under § 3C1.1 if it tends to influence or affect the issue under determination. *Id.*, comment. (n.6). The defendant's gang membership is material to his sentence because it influenced the Probation Office's sentence recommendation and will likely influence the sentence that the Court imposes. (PSR Sent. Rec., p. 2.)

The defendant stated, through his attorney in his objections to the Draft PSR, that he is not a Sureno and has not been one for many years. (PSR Addendum, ¶ 9.) Overwhelming evidence shows that the defendant's statement was false. First, the defendant admitted to being a Sureno immediately after his arrest. (PSR Addendum, ¶ 10.) Second, the defendant has several tattoos showing he is a Sureno. (PSR, ¶ 56.) Third, he has been known to local law enforcement officers as a Sureno for many years. (Ries Decl., ¶ 3.) Finally, the defendant's actions at the time disprove his assertions now: he would not have sold drugs on the Surenos' turf because if he were really a dropout, the other Surenos would have attacked him for going into their territory. (Ries Decl., ¶¶ 5-6.) If the defendant had been a *former* member when he was arrested in 2007, as he claims, he would have been familiar with the gang's practices and would not have courted danger by entering their turf, let alone selling drugs in it. (Ries Decl., ¶ 7.)

The Court should apply the enhancement for obstruction even though Probation Officer Raya did not believe the defendant's false statements. The guidelines provide for the enhancement if the defendant "*attempted* to obstruct or impede" justice. USSG §3C1.1 (emphasis added); *see also United States v. Donine*, 985 F.2d 463, 465 (9th Cir. 1993) (applying § 3C1.1 even though probation officer detected defendant's lie).

The enhancement applies even though the defendant's attorney made the false statement on his behalf. The guidelines anticipated this situation and provide for the enhancement when a defendant caused or participated in the transmission of false information. USSG §3C1.1, comment. (n.9); *see also United States v. Jensen*, 537 F. Supp. 2d 1069, 1085-86 (N.D. Cal. 2008). Courts have applied § 3C1.1 to statements made by a defendant's attorneys when the defendant knows they are false. *See United States v. Owolabi*, 69 F.3d 156 (7th Cir. 1995). In

UNITED STATES' SENT. MEM.
CR 07-764 SI                                                                                               7

*Owolabi*, the court applied the enhancement to false statements made by a defendant's attorney, finding that the defendant "most assuredly facilitated the conveying of false information to the court through his counsel and his action of doing so does not qualify as a lawful exercise of his Fifth Amendment privilege against self-incrimination." *Id.* at 164. Similarly, here, the defendant "most assuredly" told his attorney that he has not been a Sureno for many years so his attorney would tell that lie to Probation Officer Raya. The defendant would not have gotten away with lying to his probation officer himself, and he cannot get away with tricking his attorney into lying to her on his behalf. He did not obstruct justice when he refused to speak to Probation Officer Raya, but he did obstruct justice when he had his attorney lie to her.

### 2. The Defendant's Criminal History Category Is CHC-V

The government agrees with the Probation Office's determination that the defendant has 12 criminal history points, placing him in Criminal History Category V. (PSR, ¶ 37.)

### 3. The Correct Guidelines Range Is 57-71 Months In Prison

The defendant's guidelines range, an offense level of 19 in CHC-V, is 57-71 months in prison. The Probation Office's calculation, an offense level of 17 in CHC-V, is 46-57 months.

## B. A Prison Sentence Of 64 Months Satisfies The 3553(a) Factors

Analysis of the Guidelines and § 3553(a) shows that 64 months in prison is a reasonable and appropriate sentence in this case, and for this defendant.

### 1. 64 Months In Prison Is An Appropriate Sentence Considering The Nature And Circumstances Of The Offense, And The Defendant's History And Characteristics – 3553(a)(1)

#### a. The Defendant's Eight Deportations Warrant A 64 Month Sentence

This defendant's violation of § 1326 is more serious than most other violations of § 1326. The defendant has been deported from the United States eight times since 2001. (PSR, ¶ 90.) He already has one immigration conviction and was deported three times after it. (PSR, ¶¶ 7, 32.) Most defendants facing § 1326 charges have fewer deportations and no immigration convictions.

Many immigrants who come to the United States illegally do so looking for jobs to provide for themselves and their families; the defendant is not one of those people. His time in

the United States "appears to have been to support a drug addiction." (PSR Sent. Rec., p. 2.) He has never made a serious effort to keep a job. (PSR, ¶¶ 63-69; PSR Sent. Rec., p. 2.) The defendant has never learned a trade, and has had honest jobs for only a few brief periods. (PSR, ¶¶ 62-69.) Instead, he made a living selling drugs. (PSR, ¶ 61.) As the PSR stated, he did not reenter the United States to advance his life or to seek a productive future for himself or his two children, with whom he has had little contact (PSR, ¶¶ 50, 90.)

### b.    The Defendant's Drug Dealing And Gang Membership Warrant A 64 Month Sentence

Drugs and gangs are the two most intractable problems facing American cities. When the defendant has been in the United States, he has done little other than sell drugs and join a gang. He has been arrested for selling drugs eight times. (PSR, ¶¶ 30, 31, 33, 34, 38, 39, 41, 44.) He was convicted of drug-related offenses four times. (PSR, ¶¶ 30, 31, 33, 34.) Three other drug-related arrests were dismissed because a judge revoked his parole or probation from previous convictions instead of proceeding on the new charges. (PSR, ¶¶ 38, 39, 44.)

The defendant is a member of the Surenos. (PSR Sent. Rec., p. 2.) The Surenos are one of California's largest, most violent gangs. The defendant's gang "promotes criminal conduct towards the community and individuals." (PSR Sent. Rec., p. 2.) The defendant's attorney claims that he quit the gang several years ago (PSR Addendum, ¶ 9), but no evidence supports that statement because it is not true. Overwhelming and undisputed evidence proves that he is a Sureno. (PSR, ¶¶ 34, 56; PSR Addendum, ¶ 10, 12; PSR Sent. Rec., p. 2; Ries Decl., ¶ 3.)

### 2.    64 Months In Prison Will Promote Respect For The Law – 3553(a)(2)(A)

The defendant has no respect for this country's criminal or immigration laws. He has been arrested over a dozen times and deported eight times, but was never sentenced to more than one year in jail. (PSR, ¶¶ 30-35.) The defendant needs a sentence substantially longer than that to promote respect for the law. (PSR, ¶ 33.)

### 3.    64 Months In Prison Will Deter The Defendant From Illegally Reentering The Country Again – 3553(a)(2)(B)

The defendant needs a long prison term to deter him from illegally re-entering the

country again. He has been deported eight times, but charged with only one immigration offense before this case, for which he served only 60 days in jail. His deportations and previous convictions did not deter him from illegally reentering the country or selling drugs after he came back. The short jail terms and lack of immigration charges were mere slaps on his wrist.

**4.    64 Months In Prison Will Protect The Public From The Defendant – 3553(a)(2)(C)**

The defendant will not stop coming to the United States illegally unless the court imposes a significant sentence on him. He claims that he wants to return to Mexico, and implies that he will stay there. (PSR, ¶ 54.) Based on the defendant's past conduct, the Court should not believe him. Since being deported in 2001, he has never gone longer than a few months without reentering the United States and will undoubtedly return soon after he is deported. (PSR, ¶ 7.)

**5.    64 Months In Prison Will Give The Defendant The Opportunity To Participate In Drug Treatment – 3553(a)(2)(D)**

The defendant started using drugs when he was 14 years old. (PSR, ¶ 58.) To the extent that his drug problem contributed to his criminal activities, a sentence of 64 months in prison will give him the opportunity to participate in drug treatment.

## V.
## CONCLUSION

The Court should sentence the defendant to 64 months in prison, the middle of the applicable sentencing guidelines range. The defendant has been deported eight times, and already has one immigration conviction. He is a member of a violent street gang, and sold drugs on its behalf for several years. His disrespect for the law culminated in his obstructing justice by lying to his probation officer through his attorney. A sentence of 64 months in prison is appropriate for this defendant and this case, and will satisfy the factors in 18 U.S.C. § 3553(a).

DATED:    July 18, 2008

JOSEPH P. RUSSONIELLO
United States Attorney

/s/
TAREK J. HELOU
Assistant United States Attorney