JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

TAREK J. HELOU (CABN 218225)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California  94102
   Telephone:   (415) 436-7071
   Facsimile:   (415) 436-7234
   Tarek.J.Helou@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 07-764 SI |
|     Plaintiff, | UNITED STATES' REPLY SENTENCING MEMORANDUM |
|     v. | |
| JUAN HERRERA-SANTOS, | Hearing Date: July 25, 2008<br>Time: 11:00 a.m.<br>Judge: The Honorable Susan Illston |
|     Defendant. | |

UNITED STATES' REPLY SENT. MEM.
CR 07-764 SI               1

## I. Introduction

None of the arguments that defendant Juan Herrera-Santos raised in his Sentencing Memorandum warrants a departure from his guidelines range, 57-71 months in custody. The defendant ignored most of the 18 U.S.C. § 3553(a) factors. He did not address the nature and circumstances of his offense because his eight deportations in less than eight years shows that his violation of 8 U.S.C. § 1326 is more serious than most other violations of it. 18 U.S.C. § 3553(a)(1). He did not address the need for his sentence to promote respect for the law because his 13 arrests, eight convictions, and eight deportations show that he has no respect for the law. 18 U.S.C. § 3553(a)(2)(A). He did not address the need for his sentence to deter him from committing future crimes because a string of previous short sentences has not deterred him at all. 18 U.S.C. § 3553(a)(2)(B). He did not address the need for his sentence to protect the public from future crimes because he has done little other than sell drugs for his gang during the short periods of time he has been in the United States. 18 U.S.C. § 3553(a)(2)(C).

The defendant argues that a 24 month sentence – a fraction of the sentence recommended by the guidelines – is appropriate, claiming that his Criminal History Category overstates the seriousness of his past. The defendant is incorrect; he has earned his CHC-V. In the last eight years, he has been convicted of three felonies and three misdemeanors, he has had his probation revoked or violated three times, and he has been deported eight times. He committed the current offense while on probation for *two* offenses and less than one year after being released from jail on another felony conviction.

The defendant also has falsely denied his gang membership again. Although he alleges that he dropped out of the Surenos, he has provided no evidence to support this claim. He has not challenged the government's evidence showing that he is a Sureno because he cannot. Only one fact can explain why he was arrested selling drugs in Surenos territory while wearing Sureno colors: he is an active member – not a dropout, as he claims. His attorney's unsubstantiated statements are not enough to refute hard, corroborated evidence showing that he is still a Sureno, and they are not enough to avoid a two level guidelines increase for obstructing justice under USSG § 3C1.1.

UNITED STATES' REPLY SENT. MEM.
CR 07-764 SI                                                                                                    2

## II. The Defendant's Prior Convictions Were Not Minor; They Do Not Warrant A Downward Departure

### A. Congress And The Sentencing Commission Already Accounted For The Defendant's Request By Changing The Guidelines In 2001

The defendant has asked the court to depart downward by four guidelines levels, arguing that a 12 level enhancement based on his previous drug trafficking conviction overstates his criminal past. He claims that a 12 level increase is unwarranted because he received only 90 days in jail for that conviction, while some illegal reentry defendant received longer sentences on their underlying drug trafficking convictions. (Def. Sent. Mem. at 3-6.) The defendant is wrong. The court should add 12 levels, as the guidelines recommend.

Congress and the Sentencing Commission already adopted the defendant's argument by amending the guidelines in 2001 to reduce the enhancement for defendants who, like Herrera-Santos, received short sentences for underlying drug trafficking crimes. Before the 2001 amendments, the guidelines provided for a 16 level enhancement for all aggravated felonies, including drug trafficking crimes. USSG §2L1.2(b)(1)(A) (2000). As the Sentencing Commission specifically noted in the 2001 amendments, it changed the guidelines levels for § 1326 cases and replaced the blanket, 16 level enhancement for drug trafficking crimes. *See* Synopsis of Proposed 2001 Amendment to U.S. Sentencing Guidelines, Amendment 18, p. 184-85, available at http://www.ussc.gov/2001guid/userfrjan01.PDF. After the 2001 amendments, defendants who served sentences longer than 13 months on their underlying drug trafficking convictions still received a 16 level increase, but defendants who served 13 months or less on their underlying drug trafficking convictions, like the defendant in this case, received only a 12 level increase.

That four level difference is the same as the departure by the court in *United States v. Sanchez-Rodriguez*, 161 F.3d 556 (9th Cir. 1998) (*en banc*). *Id.* at 559 n.4. *Sanchez-Rodriguez* is the only case that the defendant cited to support this argument. (Def. Sent. Mem. at 3-6.) The Sentencing Commission's determination as to the seriousness of certain crimes was intended to negate the need for downward departures like those the defendant requests now, and the

Commission specifically noted that the 2001 amendment "rendered moot" the departure analysis of *United States v. Sanchez-Rodriguez*, 161 F.3d 556 (9th Cir. 1998) (*en banc*). *See* USSG App. C, amend. 632 (2001). *Sanchez-Rodriguez* is now irrelevant because it was decided before the 2001 amendments to USSG §2L1.2(b)(1), which incorporated its holding. *See United States v. Montenegro-Samaniego*, 108 Fed. App'x. 492, 493 n.2 (9th Cir. 2004).

### B. The Defendant's Criminal Record Is Not Minor

The defendant has tried to minimize his history of drug dealing. He noted that some defendants who received 16 level enhancements in § 1326 cases had more serious underlying drug trafficking crimes than he did. (Def. Sent. Mem. at 5:2-6.) However, the defendant will receive only a 12 level enhancement. As discussed above, Congress and the Sentencing Commission already reduced the enhancement for defendants like Herrera-Santos who served relatively short sentences on their underlying offenses.

Additionally, on many occasions, the defendant has evaded what could have been much steeper penalties for his criminal behavior. He has several drug-related convictions. (PSR, ¶¶ 31, 33, 34.) The defendant also has two other convictions that are, in reality, drug dealing convictions. For example, in 2000, he was convicted of being an accessory to a drug sale. (PSR, ¶ 30.) In 2005, the defendant was convicted of concealing evidence by trying to swallow $20 he received for selling drugs to an undercover police officer. (PSR, ¶ 33.) He committed both of those crimes while selling drugs, although neither is a "drug trafficking conviction" under the guidelines. The defendant also was arrested selling drugs four additional times, and had his probation revoked or violated three of those times. (PSR, ¶¶ 38, 39, 41, 44.)

The defendant's criminal conduct has not been limited to selling drugs – he had an illegal entry conviction before this case. (PSR, ¶ 32.) His eight deportations in seven years show that his civil and criminal violations of immigration laws, including his conviction in this case, are more serious than most § 1326 defendants' violations.

### C. The Defendant's Age Would Not Support A Departure Even If He Had Been Under 18 When He Committed The Drug Trafficking Crime

A defendant's age is not ordinarily relevant in determining whether to depart. USSG §5H1.1. The defendant admits that he was an adult when he sold crack in 1999, which led to the drug trafficking conviction that increased his current guidelines range by 12 levels. (Def. Sent. Mem. at 6:1-8.) Therefore, his argument that the Court should depart based on his age is frivolous.

The fact that the defendant was 18 years old when he committed the underlying drug offense is not extraordinary. Nothing in his past suggests that his age at the time of his drug trafficking conviction bears upon his likely recidivism to any exceptional degree under § 5H1.1 or places him outside the "heartland" of defendants facing a 12 point enhancement for drug trafficking crimes. The defendant's continued criminal conduct refutes his argument here and underscores the seriousness of his offenses: since the defendant turned eighteen, he has spent almost his entire life in either the criminal justice system or immigration proceedings.

### III. The Court Should Not Depart Based On The Defendant's Criminal History Because CHC-V Does Not Substantially Over-Represent His Criminal Record

The defendant must show not only that CHC-V overstates his criminal history, but that CHC-V "substantially" overstates it. USSG §4A1.3(b)(1). He cannot, however, because, as the Probation Office found, CHC-V accurately represents his criminal history. (PSR Sent. Recommendation at 2.) If anything, CHC-V understates his criminal record and likelihood of recidivism. (PSR. ¶ 89.)

The defendant has spent only a portion of the past eight years in the United States, but in that time, he has (1) been convicted of six crimes, (2) had his probation revoked or violated three additional times, (3) been arrested 13 times, and (4) been deported eight times. His adult life has been an endless string of arrests and deportations. The defendant was on probation from two offenses when he was arrested on the charges in this case. His Sentencing Memorandum implies that he never sold drugs except for the eight times he was arrested.

//

In total, the defendant has 12 criminal history points, placing him on the cusp of CHC-VI, the highest level. He is asking the Court to find that he is in CHC-III, a level reserved for defendants with no more than six criminal history points. The defendant is asking the Court to discard half of his criminal record, but has given no reason the Court should grant that request.

The burden is on the defendant to show that he was 17 years old when he sold drugs that led to his first conviction, and he has not done so. The defendant cannot collaterally attack the validity of that state court conviction or its applicability to his CHC calculation now, almost a decade after it occurred. The defendant never challenged this fact after his 13 previous arrests or his eight prior deportations.[1] The only evidence he relies on is an unverified copy of a Mexican birth certificate asserting that he was born in 1981, not 1979. That copy is invalid on its face because it lists his stepfather as his father. (PSR Addendum, ¶ 18.) The defendant ignored that fact in his Sentencing Memorandum.

A defendant's Criminal History Category also predicts the likelihood of recidivism. USSG Ch.4, Pt.A, intro. comment. Based on this defendant's past – 13 arrests and eight deportations in the past nine years – CHC-V is accurate.

**IV.   A Guidelines Range Sentence Would Not Be An "Unwarranted" Disparity Because The Defendant Is Not "Similarly Situated" To The Defendant In *Chapas-Aguilera***

Hundreds of defendants have pleaded guilty in fast track cases throughout this district. The defendant alleges that he was unfairly denied a fast track disposition by comparing his case to only one of those defendants. 18 U.S.C. § 3535(a)(6). However, the defendant was not "similarly situated" to the defendant in *United States v. Chapas-Aguilera*, CR 07-0763-01 WHA. Therefore, the disparity in the guidelines range between this defendant and the defendant in *Chapas-Aguilera* is warranted.

---

[1] The Court should note that the defendant bases his argument that he was actually born in 1981 on his claim, now, that he lied to police officers about his age when he was arrested in 1999. In addition to showing that the defendant is not truthful, his explanation is illogical. Most illegal aliens arrested in San Francisco tell police that they are younger than their actual age to benefit from the city government's "Sanctuary City" policy, not older, which would expose them to deportation and more severe criminal penalties.

1   First, investigators discovered no evidence indicating that Chapas-Aguilera is in a gang. (Decl. Tarek J. Helou Supp. Gov't Reply Sent. Mem. ("Helou Decl."), ¶ 9.)  By contrast, defendant Herrera-Santos is a long time member of the Surenos, one of California's largest, most dangerous gangs.  (*See, e.g.,* Gov't Sent. Mem. at 8:7-17, filed July 18, 2008.)  Defendant Herrera-Santos came to the United States to sell drugs; he had little drawing him back here other than his gang.  (PSR, ¶ 90; PSR Sent. Recommendation at 2.)  Although the defendant's children were here, he spent little time with them.  (PSR, ¶¶ 50, 90.)

Additionally, Chapas-Aguilera's criminal history is not as serious as defendant Herrera-Santos's.  Chapas-Aguilera had only one drug conviction and five other arrests.  (Helou Decl., ¶¶ 3-8.)  By contrast, defendant Herrera-Santos has four drug-related convictions, three probation violations or revocations based on selling drugs, and two other drug-related arrests.  (PSR, ¶¶ 30-44.)  Chapas-Aguilera also had fewer deportations than the defendant here, although that difference was not as great as the difference between their number of convictions and arrests.

**V.      The BOP's Substance Abuse Treatment Policies Do Not Warrant A Variance**

   **A.      The Defendant's Request Is Premature Because He Has Not Completed The Portion Of The RDAP For Which He Is Eligible**

The defendant's request for a variance based on the BOP's substance abuse treatment policies is premature.  As he admits, non-alien inmates and alien inmates without ICE detainers are eligible for a reduction in their sentences only *after* they successfully complete the BOP's Residential Drug and Alcohol Program ("RDAP").  (Def. Sent. Mem. at 11:6-8.)  However, those defendants do not automatically receive a sentence reduction – they must first complete the RDAP.  The defendant is asking the Court to guarantee him a reduction in prison time that is not guaranteed to the U.S. citizens and legal aliens who, the defendant claims, benefit from the BOP's RDAP program.

The defendant has not even started serving his sentence, let alone completed the RDAP. Therefore, *even if* the defendant's argument had merit, which it does not, he would not be able to assert it until he completed the initial portion of the program, which he claims he is eligible for. (Def. Sent. Mem. at 13:5-6.)  For example, in *McLean v. Crabtree*, 173 F.3d 1176 (9th Cir.

1999), inmates with ICE detainers who challenged their ineligibility for the sentence reduction had *already completed* the residential substance abuse program before filing for a reduction in their sentence. *Crabtree*, 173 F.3d at 1180. Therefore, the defendant should wait to request this relief until (1) he is housed at a facility that has the RDAP, (2) he signs up for the program, and (3) he completes the first phase of the program. Even then, however, a court should deny his request.

### B.     The 3553(a) Factors Do Not Warrant A Variance

The core of the defendant's argument is that as an illegal alien with an ICE detainer, he will be treated differently than U.S. citizens and legal aliens. The defendant is arguing, in essence, that the BOP regulations are bad policy, but courts have long recognized that disparate treatment of aliens and citizens is justified. *See, e.g., Crabtree* 173 F.3d at 1185-86. The defendant's request is a policy matter that should go to a different forum, either Congress or the executive branch, not to the courts. The Ninth Circuit already addressed a similar issue in *Crabtree*, and held that the BOP has legitimate reasons for treating aliens with ICE detainers differently than other defendants. *Id.* at 1186. Specifically, the court upheld the exclusion of prisoners with detainers, like the defendant here, from the sentence reduction program because the BOP needs to prevent prisoners from fleeing with detainers lodged against them. *Id.*

The defendant has cloaked this argument in the guise of two § 3553(a) factors. Neither factor supports a variance from his sentence. The defendant argues that the BOP's policy does not satisfy § 3553(a)(2)(D) because the non-RDAP drug treatment program will not give him the incentive that he needs to complete a drug treatment program. (Def. Sent. Mem. at 13:5-14.) The BOP will give the defendant drug treatment. 28 C.F.R. § 550.55. The defendant is not entitled to his preferred incentive to encourage him to complete drug treatment. The defendant's desire to conquer his drug addiction should be incentive enough to participate in any treatment program, regardless of whether he receives a reduction in his sentence. This argument implies that the defendant's claim that he wants to overcome his drug addiction is not true. (PSR, ¶ 61.)

The defendant also argues that his inability to get a sentence reduction creates an unwarranted disparity under § 3553(a)(6) because he will be treated differently than U.S. citizens

UNITED STATES' REPLY SENT. MEM.
CR 07-764 SI                                                                                                                              8

and legal aliens. (Def. Sent. Mem. at 13:14-15.) However, courts have long recognized the government's right to treat aliens and citizens differently. *See Crabtree*, 173 F.3d at 1185 n.11.

The cases the defendant relies on to support this argument are not on point. In both of those cases, the defendant was convicted of selling drugs, not illegal entry. *United States v. Cubillos*, 91 F.3d 1342, 1343 (9th Cir. 1996); *United States v. Pacheco-Soto*, 386 F. Supp. 2d 1198, 1200 (D.N.M. 2005). The Court in *Pacheco-Soto* held that collateral consequences of being a deportable alien, similar to those that defendant Herrera-Santos seeks relief from here, could be acceptable reasons for a departure from the guidelines range. *Id.* at 1205. However, the court specifically rejected the use of that departure in § 1326 cases like this one because the applicable guideline took into account the defendant's deportable alien status. *Id.* at 1205-06.

This argument seeks to create an automatic downward variance for defendants with drug addictions in § 1326 cases. A ruling granting it would be bad policy, and would turn almost every § 1326 case into a case that is outside the "heartland" of typical cases.

**VI.    The Court Correctly Denied The Defendant's *Salazar-Lopez* Challenge**

The Court was correct when it denied the defendant's motion to dismiss. The government incorporates into this memorandum the arguments from its brief opposing the motion and the arguments it made at the hearing on the motion.

**VII.    Conclusion**

Defendant Juan Herrera-Santos has not given the Court even one valid reason to depart from the applicable guidelines range, let alone to cut it by two thirds. Instead, he has lied to the Court again by denying his membership in a dangerous street gang. The Court should sentence him to 64 months in prison, the middle of the applicable guidelines range.

DATED:    July 22, 2008                             JOSEPH P. RUSSONIELLO
                                                    United States Attorney


                                                    _____/s/_____
                                                    TAREK J. HELOU
                                                    Assistant United States Attorney

UNITED STATES' REPLY SENT. MEM.
CR 07-764 SI                                                                                    9