BARRY J. PORTMAN
Federal Public Defender
STEVEN G. KALAR
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant Herrera-Santos

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-0764 SI |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S REPLY TO |
| | ) | GOVERNMENT'S |
| v. | ) | SENTENCING |
| | ) | MEMORANDUM |
| JUAN HERRERA-SANTOS, | ) | |
| | ) | |
| Defendant. | ) | **Hearing Date**: Friday, July 25, |
| | ) | 2008 at 11:00 a.m. |

**Introduction**

Mr. Herrera-Santos has Sureño tattoos. This fact has cost him a fast-track offer with a four-level reduction from the government, and now has the government seeking obstruction charges. These are not just results for a man who is not an active Sureño member, who has never been arrested in gang activity or with gang members, who has never had a gun or a violent offense characteristic of the Sureño gang.

If the Court is inclined to adopt the government's view that the Sureño issue is the pivotal question in this routine illegal reentry case, the defense requests an evidentiary hearing on the question. A far better course, however, is to focus on what is *known* about this defendant: he is a petty, street-level dealer who sells $20 rocks to support his own

*Herrera-Santos*, CR 07-0764 SI
DEF. SENT. REPLY

habit. The sixty-four month sentence urged by the government is not appropriate for this man, and does not comport with the factors of 18 USC § 3553(a).

# I.     If "Active" Gang Membership is a Material Fact, an Evidentiary Hearing is Requested

Briefing on the Sureño gang issue will not resolve a dispute that the government urges is central to this illegal reentry sentencing. This gang issue has been a persistent problem in the case, with it first rising in the context of objections to the presentence report. As the Probation Officer correctly observed in response to defense objections:

> Although the police report indicates that the defendant was in the Sureño territory, characterized by Hyde Street in the Tenderloin District of San Francisco, blue is the color associated with Sureño gang members, and their form of display is wearing a blue belt with the end dangling, there is no concrete evidence that the defendant was acting *on behalf* of the Sureño when he was arrested. Although Herrera-Santos was noted to have worn a belt in the fashion displayed by Sureños, the police report indicates that it was only at the booking stage of the defendant's arrest that he was noticed to have Sureño tattoos. San Francisco, California Police Department Gang Unit Task Force's (SFPD GUTF) also indicated *there were no gang allegations in the arrests made by their agency*, but the defendant is an identified gang member.

*PSR Objections* at 2 (emphasis added).

The defense specifically requested discovery during the presentence process of any field identification cards, informant interviews, or other evidence identifying Mr. Herrera-Santos as an active Sureño member. Nothing has been produced to date. Instead, the government has relied on a declaration of an officer who opines that the defendant is an active member – without any supporting arrest reports, informant interviews, or photographs of Mr. Herrera-Santos associating with active Sureño members. *See Decl. Sgt. Dien Ries* (captioned "King Decl. Supp. United States' Sent. Mem.")

It is not disputed that Mr. Herrera-Santos is burdened with Sureño tattoos (which he seeks to have removed). It is not disputed that the defendant has been a Sureño member. The only question is whether this $20 rock dealer – who has never been armed or arrested in gang activity – is now an "active" Sureño gang member. If the Court feels

that this issue is a material fact that bears upon the sentencing analysis, the defense would request a continuance of sentencing, full discovery of all material upon which the Probation Office and the government are apparently relying to make their assertions, and an evidentiary hearing. *See Irizarry v. United States*, 128 S. Ct. 2198, 2203 (2008) ("Sound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues.")

**II.     *Sanchez-Rodriguez* Survives Amendments to Section 2L2.1**

In its Reply, the government argues that the Sentencing Commission has effectively overruled the Ninth Circuit's *en banc* decision in *United States v. Sanchez-Rodriguez*, 161 F.3d 556 (9th Cir. 1998) (*en banc*). *See Gov't Reply* at 4:3-5 (*Sanchez-Rodriguez* is no relevant because it was decided before the 2001 amendment to USSG § 2L1.2(b)(1)"). The government is wrong on several counts.

First, the government relies on an unpublished decision in support of its argument. *See id.* at 4:3-5 (*citing United States v. Montenegro-Samaniego*, 108 Fed. App'x. 492, 493 n.2 (9th Cir. 2004)). Under Ninth Circuit Rule 36-3, "Unpublished dispositions and orders of [the Ninth Circuit] are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." Ninth Cir. Rule App. Proc. 36-3(a).

Moreover, Ninth Circuit rules expressly preclude did citation of unpublished decisions issued before January 1, 2007 in any court:

> (c) Citation of Unpublished Dispositions and Orders Issued before January 1, 2007. Unpublished dispositions and orders of this Court issued before January 1, 2007 may not be cited to the courts of this circuit, except in the following circumstances.
>
> > (i) They may be cited to this Court or to or by any other court in this circuit when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.
>
> > (ii) They may be cited to this Court or by any other court in this circuit for

> factual purposes, such as to show double jeopardy, sanctionable conduct, notice, entitlement to attorneys' fees, or the existence of a related case.
>
> (iii) They may be cited to this Court in a request to publish a disposition or order made pursuant to Circuit Rule 36-4, or in a petition for panel rehearing or rehearing en banc, in order to demonstrate the existence of a conflict among opinions, dispositions, or orders.

*Id.* at 36-3(c)(i) - (iii). The 2004, unpublished *Montenegro-Samaniego* decision falls in none of these exceptions, and the defense accordingly objects to the government's reliance on this decision in its brief.

The *Montenegro-Samaniego* memorandum disposition is also rendered moot by *Booker*. *Montenegro-Samaniego* did not deal with a departure from the twelve-offense level specific offense adjustment at issue in the present case (and that came into play after the 2001 amendment). 108 Fed. Apx. 492. Instead, it held that a sixteen-level specific offense adjustment for kidnaping was "mandatory." *Id.* at 493. Of course, the concept of "mandatory" guidelines is a quaint anachronism after the Supreme Court's 2005 decision in *Booker* – a decision that came after the 2004 *Montenegro-Samaniego* case and that rendered that memorandum disposition moot. *See United States v. Booker*, 543 U.S. 220, 265 (2005) (finding Sixth Amendment violation with mandatory guidelines and excising statutory provisions that require mandatory guidelines).

Assuming without conceding, however, that the Sentencing Commission has cabined an *en banc* court of the Ninth Circuit, the issue is purely academic in any event. The below-guideline sentence urged by the defense is equally appropriate as a variance under Section 3553(a).

In a 2008 case, another *en banc* Court of the Ninth Circuit issued what was clearly intended as the lead "primer" on Section 3553(a) sentencing in the Ninth Circuit. *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) (*en banc*). In *Carty*, the Court explained the primary goal of the federal sentencing court after *Booker*, *Rita*, and *Kimbrough:*

> The overarching statutory charge for a district court is to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a) and (a)(2).

*Carty*, 520 F.3d at 991.

The sentence that is "sufficient, but not greater than necessary" given the unique facts of this case is a below-guideline custodial term. The first factor in the Section 3553(a) analysis is "(1) the nature and circumstances of the offense and the history and characteristics of the defendant." *See* 18 USC § 3553(a)(1). That is precisely the core analysis that was at issue in *Sanchez-Rodriguez*, and is the core question for the sentencing now before this Court. The nature and circumstances of this illegal reentry offense, and the history of an addicted, $20 street dealer who spent his youth homeless on the streets of Tijuana, do not mandate the sixty-four month sentence urged by the government. A below-guideline sentence is instead appropriate.

### III. The Court Should Consider the Refusal to Give the RDAP Reduction to Alien Inmates as Part of the Section 3553(a) Analysis

In its Reply, the government recommends that the defendant should wait to request relief for completion of the RDAP program until "(1) he is housed at a facility that has the RDAP, (2) he signs up for the program, and (3) he completes the first phrase of the program." *Gov't Reply* at 8:3-5. With admirable candor, the government then opines, "Even then . . . a court should deny his request." *Id.* at 8:5-6. The logic of the government's argument perfectly mirrors that of the Bureau of Prisons, which incarcerates alien addicts, does not provide incentives for drug treatment programs, and may not accept Mr. Herrera-Santos into drug treatment.

The government has not, and indeed, cannot, cite any case that precludes the Bureau of Prison's treatment of its prisoners as a valid consideration in the Section 3553(a) analysis. In fact, to fail to include this issue in the sentencing analysis would be

1 directly contrary to the sentencing statute, which directs this Court to consider "the need
2 for the sentence imposed – to provide the defendant with needed educational or
3 vocational training, medical care, or other correctional treatment in the most effective
4 manner." 18 USC § 3553(a)(2)(D). Ordering the Bureau of Prisons to permit Mr. Herrera-
5 Santos to participate in the RDAP program, and reducing his sentence in light of his
6 voluntary pursuit of treatment, achieves the goal of Section 3553(a)(2)(D) of providing
7 "correctional treatment in the most effective manner." *Id.*

8   One of the many benefits of the *Booker* decision is that it allows for "bottom-line"
9 sentencing: common sense, reasonable sentences that best match the particular offender
10 and offense. In this case, society's main concern with Mr. Herrera-Santos is not that he
11 has gang tattoos, or even that he has been deported and reenters. The bottom-line in this
12 case is Mr. Herrera-Santos's addiction – and the petty drug sales used to fuel that
13 addiction – that are the root of *all* of the criminal conduct. The sixty-four month sentence
14 urged by the government will do nothing to discourage recidivism in this case if the
15 underlying addiction problem is not finally addressed. The best way to address that
16 problem is a below-guideline sentence, a very strong RDAP recommendation, and
17 incentives incorporated in the sentencing in light of the Bureau of Prison's exclusion of
18 alien addicts from the program's benefits.
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

## Conclusion

For the foregoing reasons, the defense respectfully requests that the Court depart and/or adopt a variance from the guideline range, and impose a sentence of twenty-four months of custody with supervised release to follow.

Dated: July 23, 2008

                          Respectfully submitted,

                          BARRY J. PORTMAN
                          Federal Public Defender

                          /s

                          STEVEN G. KALAR
                          Assistant Federal Public Defender